IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MR. JONATHAN O'NEILL BROWNE :
306 36th STREET :
NE BRADENTON, FLA. 34208 :
:
    and :
:
MS. DOLORES RITA  BROWNE :
343 EAST WYNNEWOOD ROAD :
MERION STATION, PA.19066 :
:
    and :     Civil Action No.
:
MS. ALLEGRA SAENS COLEMAN :
600 CONSHOHOCKEN STATE ROAD :
PENN VALLEY, PA. 19072 :
:
    Plaintiffs :
:
      v. :
:
SHOPIFY, INC. :
126 YORK STREET, SUITE 200 :
OTTAWA, ON, CANADA :
K1N 5T5 :
:
    and

VALORI ZASLOW
854 MONTGOMERY AVE
NARBETH PA., 19072
    Defendants

---

## COMPLAINT

Plaintiffs, Mr. Jonathan O'Neill Browne ("J. Browne" or "JOB,") Ms. Dolores Rita

Browne ("D. Browne" or "DRB,") and Ms. Allegra Saens Coleman ("A. Coleman" or "ASC,")

on behalf of themselves, by and through their counsel, bring this Complaint for breach of

contract, interference with contract, interference with advantageous contractual relationships, breach of fiduciary duty, negligence, gross negligence, breach of the covenant of good faith and fair dealing that adheres to every commercial contract and for infringement and violation of the federal copyright law, 17 U.S.C. § 101. These claims arise out of defendant, Valori Zaslow's ("V. Zaslow" or "VZ") bad faith claim of ownership to software for which Jonathan Browne was the "author" within the meaning of 17 U.S,C. § 102(a), and for a website that was jointly authored by J. Browne, ASC and DRB within the meaning of 17 U.S,C. § 102(a), and Shopify Inc.'s ("Shopify")'s   willful, reckless, and unreasonable denial of access to J. Browne to the code which Shopify knew or should have known was authored by J. Browne, and to the website that was jointly authored by J. Browne, ASC and DRB.  These wrongful actions by Zaslow and Shopify, separately and in conjunction with each other, breached the respective contractual obligations of Zaslow and Shopify to Jonathan Browne, D. Browne, and A Coleman, and infringed upon the exclusive rights which J. Browne possessed as the creator and author of the code and the joint rights which J. Browne shared with ASC and DRB as the individuals who collaborated in authoring the website by denying them access to their own intellectual property which Shopify held in trust for them.  Plaintiffs allege upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon investigation made by and through their attorneys and their co-plaintiffs, as follows:

## A.      NATURE OF THE ACTION

1.      Plaintiffs, DRB and ASC, are individuals who entered into an Operating Agreement ("OA") with defendant, V. Zaslow to form a Pennsylvania LLC to be known as ReEvent Enterprises, LLC ("REL") whose mission was to create, maintain and administer a

website for vendors, purchasers and customers to sell, buy and market goods and services related to the sponsorship and giving of events (e.g. parties, promotions, weddings, bar/bat mitzvahs, corporate meetings, charity events, and reunions). The OA identified V. Zaslow, DRB, and ASC as the sole shareholders and managing partners of the yet to be formed Pennsylvania limited liability corporation, REL; the OA gave DRB and ASC the responsibility for creating and maintaining the website, and Zaslow the responsibility for marketing the website and the goods and services sold on the website.

2.      In anticipation of the formation of REL, DRB and ASC recruited J. Browne to write the code for the website, who opened an account with Shopify to serve as the Internet host for his code and the website. The website was constructed through a process in which DRB and ASC created the content for the website, passed the information to J. Browne, who translated the content provided by DRB and ASC into code and then placed the code on an account provided by Shopify, identified as reevent.myshopify.com, a name selected by J. Browne when he opened the account with Shopify in anticipation of the fact that once REL was organized it was going to be the owner and operator of the website.

3.      REL was never organized because of breaches of the OA and of fiduciary duties V. Zaslow owed her putative partners, DRB and ASC. These breaches of contract and fiduciary duties, some or all of which also constituted breaches of the covenant of good faith and fair dealing that adhere to every commercial contract, negligence, gross negligence, interference with contract, interference with advantageous business relations, and infringement of the federal copyright law, included, but are not limited to: A) failing to pay her share of the start up costs for REL and the website; B) failing to pay her share of the costs owed to Shopify on a monthly basis in order to continue to maintain the account

at Shopify, C) failing to perform the marketing necessary to launch the website; D) engaging in multiple acts of misfeasance and nonfeasance which unreasonably delayed the launch of the website; E) failing to communicate with D. Browne and A. Coleman for extended periods of time thereby abandoning the duties she was obliged to perform under the OA; F) insisting that she take responsibility for organizing the REL LLC, failing to do so, and when asked by her putative partners whether the LLC had been formed knowingly and falsely advising them that the LLC had been formed, when in fact she knew that it had not; G) attempting to deny Jonathan Browne access to the code, which he created, by making the false claim that she was the owner of the account placed at uniform resource locater (url) reevent.myshopify.com when she knew she did not write the code stored at the site and did not open the account with Shopify; H) attempting to close the reevent.myshopify.com account without advising or seeking the consent of her putative partners, D. Browne and A. Coleman, thereby willfully denying plaintiffs access to the code written by J. Browne and the website which was jointly authored by J. Browne, ASC and DRB ; and I) continuing to insist on ownership rights to the code and the website which based on the letter dated July 11 , 2014 written by the undersigned counsel representing J. Browne, ASC and DRB to Monica Gallant, counsel for Shopify, that was supported by the declarations of J. Browne, ASC and DRB, shows that she knew or should have known that she can make no bona fide or remotely  plausible claim to ownership of the code or the website which Shopify held and continues to hold in trust for the owner of the revent.myshopify.com account.

    4.    As the owner of the code placed on the Shopify website at reevent.myshopify.com, J. Browne delegated the administration of the website

(communications with Shopify, payment of bills, and website maintenance issues) to DRB. Accordingly, when Monica Gallant, an attorney for Shopify, received V. Zaslow's request to terminate the reevent.myshopify.com account, she wrote DRB an email indicating that Shopify's records showed that DRB was the "owner" of the account, and sought clarification as to the authority V. Zaslow had to terminate the account. However, Ms. Gallant simultaneously advised Ms. Zaslow and Ms. Browne that ownership of the account could be established by producing the following documentation 1) a scanned copy of business license; 2) a scanned copy of photo ID; 3) last 4 digits of card on file; 4) amount for last two bills.  Since Zaslow had access to this particular information she evidently forwarded it to Gallant who concluded that V. Zaslow was the owner of the account, and therefore notified DRB that she was being removed as owner of the account in favor of V. Zaslow. DRB immediately provided Ms. Gallant with the same information V. Zaslow had provided, and stated numerous other reasons as to why J. Browne was the true owner of the account, how she and ASC had collaborated with J. Browne to author the overall website, and that the only factual basis upon which V. Zaslow claimed ownership to the account was the OA, which had never come into effect because of Ms. Zaslow's failure to organize REL as a corporation.  By email dated June 19, 2014, Ms. Gallant advised DRB that Shopify had received the information DRB had sent, and that because there were "conflicting claims of ownership… in accordance with Shopify policies, [Shopify] was denying access to the account to both parties until the conflicting claims were resolved."

5.    After unsuccessfully attempting to negotiate a compromise with V. Zaslow that would have allowed both parties to have access to the code located at revent.myshopify.com, counsel for J. Browne, ASC, and DRB wrote Ms. Gallant a letter

dated July 11. 2014, a copy of which is attached hereto as Exhibit "A," which contained

factual allegations supported by sworn declarations submitted by J. Browne (Exhibit "A" to

the July 9,2011 letter), DRB (Exhibit "B" to the July 9,2011 letter), and ASC (Exhibit "C" to

the July 9,2011 letter) under 28 U.S.C. § 1728 which conclusively established that

Jonathan Browne was the owner of the code located at reevent.myshopify.com because:

A) he alone authored, created and placed the code at reevent.myshopify.com in order for

Shopify to hold the code in trust in its capacity as the internet host for the code he wrote to

support the website: B) under the terms and conditions of the contract that was entered

between Browne and Shopify the owner of the account is the person who opened it;  the

facts contained  in the declarations show that Jonathan Browne opened the

reevent.myshopify.com account, that the website as a whole was collaboratively authored

by J. Browne, ASC and DRB, and that V. Zaslow played no role whatsoever in opening this

account. The declarations show that DRB and ASC spent more than 1900 hours

developing and creating the substantive content for the website which was translated to

code by J. Browne, that V. Zaslow made few, if any, contributions to the authorship of the

website  (less than an estimated 30 hours dedicated to any aspect of the website).

6.     Ms. Gallant responded to the July 11 letter by email dated July 10, 2014 that

stated:

> Thank you for sending the below. We are unable to reasonably
> determine account ownership based on all of the documentation
> received thus far. ***Disputes that arise between business partners
> need to be settled outside of Shopify***. Alternatively, we would be
> more than happy to comply with a court order or subpoena.

7.     On the same day Counsel for J. Browne, ASC and DRB responded to Ms.

Gallant's July 10, 2014 email as follows:

While this dispute has arisen in the context of a dispute between partners, the gravamen of the underlying claim is not between partners but between Jonathan Browne, the creator of the code, and Shopify. Without regard to the dispute between Zaslow and Ms. Browne and Ms. Coleman, Jonathan Browne opened an account with Shopify and placed the code on Shopify who served as the internet host for the data he placed on your website. Shopify served as the custodian for the intellectual property and proprietary information which Mr. Browne placed in trust with Shopify. By denying Mr. Browne access to the intellectual property which he created, Shopify's actions have barred him from access to his own property, property which Shopify held in trust for him, which now makes it impossible for him to complete the work he has already begun. Shopify cannot sidestep this issue by claiming that "disputes between business partners must be settled outside of Shopify" because it is Shopify which has created a dispute between itself and Mr. Browne by denying Mr. Browne access to his own property….

8.      On July 9,2011, Ms. Gallant wrote the following email in response to counsel's

July 10, 2014 email:

As I understand this is a troublesome situation disputes of this nature would need to be resolved outside of Shopify. Once an account owner is determined between the partners we can then proceed with providing the code.

9.       Despite the fact there was no basis to contest the fact that J. Browne was the

author of the code which Shopify held in its trust as the internet custodian of the code, and

he is the person who opened the reevent.myshopify.com account with Shopify, Shopify's

response to J. Browne's request for access to the code he created made clear that the only

way Shopify would permit J. Browne to gain access to his own code was by obtaining a

court order requiring Shopify to produce the code owned by J. Browne. As the author of the

code within the meaning of 17 USC § 102(a), Shopify's denial of access to the code that J.

Browne authored constituted a violation of the federal copyright law 17 U.S.C. § 101 et.

seq, and an infringement of the exclusive rights vested in copyrighted works under 17

U.S.C.§106, and a violation of the contractual rights granted under J. Browne's contract

with Shopify which specifies that the owner of the account is the person who opened the

account.

10      By virtue of the foregoing breaches and violations of law described above, including violations of the federal copyright law, individually and jointly by the defendants v. Zaslow and Shopify, Plaintiffs seek declaratory and injunctive relief, including preliminary injunctive relief, compensatory and punitive damages, statutory damages up to $150,000 for willful infringement under 17 U.S.C § 504(c), and an award of the costs, including attorneys fees for bringing this action which the court is authorized to award under 17 U.S.C § 505.

## B.      JURISDICTION AND VENUE

11.  This Court has subject matter jurisdiction over this action because it raises a federal question under 28 U. S. C. § 1331, and the Court may exercise jurisdiction over related state claims pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367.

12.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in the Eastern District of Pennsylvania.

## C.      PARTIES

13.      Plaintiff, Jonathan O'Neil Browne, is a citizen of the United States, and a citizen and resident of the State of Florida, who resides at 306 36th Street, NE Bradenton, Fla. 34208.

14.      Plaintiff, Dolores Rita Browne, is a citizen of the United States, and a resident of the Commonwealth of Pennsylvania, who resides at 343 East Wynnewood Road, Merion Station PA. 19066.

15.     Plaintiff, Allegra Saens Coleman, is a citizen of the United States, and a resident of the Commonwealth of Pennsylvania, who resides at 600 Conshohocken State Road, Penn Valley PA. 19072.

16.     Defendant, Valori Zaslow, is a citizen of the United States and a resident of the Commonwealth of Pennsylvania, who resides in Penn Valley in Montgomery County Pennsylvania, who regularly conducts business from her store located at 854 Montgomery Ave, Narbeth, PA. 19072.

17.     Defendant, Shopify Inc., is a foreign corporation incorporated under the laws of Ontario Canada doing business within the Commonwealth of Pennsylvania, with a principal place of business located at 126 York, Street, Suite 200, Ottawa, ON, Canada, K1N 575, who is doing business within the Commonwealth of Pennsylvania without having acquired a Certificate of Authority as required by 15 Pa. C.S. § 4122.

## D.     STATEMENT OF FACTS

18.     Plaintiffs incorporate by reference the factual allegations contained in paragraphs 1 to 17, as if fully set forth herein.

19.     Plaintiff, Allegra Saens Coleman, is a graduate of Temple University Law School, who has managed two businesses in partnership with her mother, Dolores Rita Browne:  1) An events space known as TPDS Club, a venue which serviced 200 events per year in Center City Philadelphia, that included parties sponsored by individuals, promoters, universities, companies, law firms and hospitals, as well as weddings, corporate meetings, bar/bat –mitzvahs, and reunions; and 2) a website for an interior design firm which was used to sell high end furniture, art and accessories.

20.     In or about 2001, ASC met V. Zaslow who managed a retail store that

sold goods and services related to events. V. Zaslow mentioned that she was thinking of creating a website which could be used to "recycle" goods or provide services used for events. For instance, someone may have brought 100 champagne glasses to use at a wedding. If after the wedding they no longer had use for the glasses, they could sell or rent the glasses over the website to someone who was giving a wedding or event at a favorable price. Similarly, someone could sell or rent a wedding dress, a 20's centerpiece, or tables and chairs that they bought and no longer wanted.

21.      In the course of discussing this topic, ASC advised VZ that her brother, J. Browne, was a software computer engineer who was skilled at building websites. This exchange initiated a dialogue which evolved into the idea of starting a company whose mission would be to develop, create, administer and maintain a website whose purpose would be to develop a marketplace for the sale, rental, consignment and marketing of event related goods and services that could be used by individuals, vendors, promoters, purchasers and customers.

22.      In order to implement the idea V. Zaslow, ASC, and DRB entered into the Operating Agreement of ReEvent Enterprises, LLC. ("Operating Agreement" or "OA") (attached hereto as Exhibit "2" to ASC Declaration, which is Exhibit "C" to letter to Monica Gallant dated July 9,2011 (See Exhibit "A," supra at  ¶ 5]) which was entered into in order to establish a Pennsylvania LLC whose purpose would be to create, establish, maintain, and administer an events based website. Ms. Browne participated in the venture because of her past experience in creating, developing and maintaining a business website, graphic design, and being the general manager of an event space.

23.      The key material terms of the OA provided that: 1) V. Zaslow, ASC and DRB

would be the principals of the corporation, with V. Zaslow owning 60% of the stock, and ASC and DRB each owning 20% of the stock (OA ¶s 1, 2, 3 and 5); 2) the term of the agreement was "indefinite" (OA¶ 4); 3) the purpose of the LLC was "to establish and maintain a website whose primary purpose would be to provide advertising space and pages to showcase items for sale, rent and consignment for events (¶ 2); 4) REL would not receive income from advertising or sales made by ReEvent, LLC ("ReEvent") (a company owned and controlled by Zaslow), catering a party by ReEvent, providing personnel for a party staffed by ReEvent, consultation services provided by ReEvent, or consignments made by Sophisticated Secondz (another company owned by Zaslow), or items sold by DesignReasons (a company owned by ASC and DRB) (OA ¶ 2); 5) if the company was sold all three partners would have to agree to the terms sale, but the proceeds would be divided 60% V. Zaslow, 20% DRB, and 20% ASC (¶ 6(e) and (f); 6) The business was to be managed by the principals who are referred to as "Members" in the agreement (OA ¶8); 7) the site was to "be maintained and updated regularly by Browne and Coleman while Zaslow was to be in charge of sales (OA ¶10(c)); 8) the company was to open a bank account and procure a credit card in order to cover start up costs (OA ¶10[b]), and 9) a "MAC Pro Computer [was] to be given to Jonathan O'Neil Browne, for developing a company website."

24.    DRB and ASC offered to do the paperwork necessary to organize and register ReEvent Enterprises, LLC as a Pennsylvania limited liability corporation (a company that would have been separate and distinct from ReEvent LLC, which was owned exclusively by V. Zaslow), but V. Zaslow insisted on performing this task on behalf of the three putative partners on her own. When DRB and ASC asked whether the company had

been organized and registered, V. Zaslow assured DRB and ASC that REL had been organized and registered as a Pennsylvania LLC. However, when DRB and ASC insisted on seeing the documentation establishing the existence of a new corporation, V. Zaslow admitted that she had failed to organize or register REL as a limited liability corporation. Her justification for failing to organize the LLC was that the website had not yet been launched and that it cost too much. Consequently, the condition precedent for the OA to become operative and the factual premise upon which the OA was entered—that REL would be organized and established as an LLC--- was never fulfilled.

25.    The reason V. Zaslow was given 60% of the interest in REL was because the concept was that the retail business at ReEvent would be part of the enterprise, and that since V. Zaslow started ReEvent she deserved a larger percentage return. Moreover, the understanding was that 60% is what she would receive in the event the company was sold, but in the day-to-day operation of the company V. Zaslow, ASC and DRB would act as equal partners. In terms of managing and running the enterprise on a day to day basis, the three principles understood and agreed that no single member would have authority and control over any other and that the members would manage the enterprise based on consensus between the three "members" and "Shareholders."

26.    The Operating Agreement provides that it was the responsibility of ASC and DRB to create, develop and maintain the website (OA, ¶10[c]), and it was V. Zaslow's responsibility to market the website.  ASC and DRB recruited J. Browne, a software engineer with 30 years of experience, to write the code and software for the site based on substantive content created and provided by DRB and ASC. J. Browne was the son of D. Browne, and the brother of ASC. The creation of the website was a family enterprise.

27.     As compensation for his services J. Browne was allowed to retain the MAC Pro Computer that was purchased at a cost of $4, 215.66 that was necessary to acquire in order to create the code for the website after the website was launched. However, at his normal hourly rate of $100 per hour, the value of the computer represented only a small fraction of the actual value of the services he rendered (estimated to be in the range of $25,000 of $30,000) which he donated to the enterprise because of the close family relationship and because his parents had given him a substantial amount of capital that enabled him to start his own business. Because J. Browne donated most of the time necessary to create the code he authored, and he had no written agreement with REL or any of the putative partners who entered the OA to organize REL, no "work-made-for-hire" agreement within the meaning of 17 USC § 101 was entered or ever existed. Consequently, the exclusive rights of authorship regarding the code written and created by J. Browne granted under 17 U.S.C. § 106 vested solely with J. Browne. J. Browne was neither a partner nor a putative partner of REL, V. Zaslow., DRB or ASC.

28.     In order to construct the website, J. Browne opened an account with Shopify in order for it to serve as the Internet host for the code he created during the construction of the website and as the host for the code he authored after the website was launched. J. Browne opened the website under the uniform resource locater reevent.myshopify.com in anticipation of the formation of REL, which, due to V. Zalow's misfeasance, nonfeasance, and misrepresentations described above, was never organized.  J. Browne opened the account by filling out the forms provided by Shopify on its website, which enrollment must be readily accessible to Shopify from its own records since one of its fiduciary duties as the custodian for the intellectual property held in trust on its website is to maintain accurate

records.

29.     Section 2, Paragraph 1 of the "Account Activation" Section of the Terms of

Service Agreement (hereafter "Shopify Terms of Service Agreement" or "STSA") prepared

by Shopify that governs the Terms and Conditions of Shopify's service of the account

opened by Jonathan Browne, a copy of which is attached hereto as Exhibit "B," states;

> Subject to section 2.2, **the person signing up for the Service will
> be the contracting party ("Account Owner")** for the purposes of our
> Terms of Service and will be the person who is authorized to use any
> corresponding account we may provide to the Account Owner in connection
> with the Service (emphasis supplied).

Consequently, under the terms and conditions of the Shopify contract J. Browne, in

addition to the fact he was the author of the code which Shopify held in trust

in its capacity as the internet host for the code, Shopify was also contractually bound

to recognize J. Browne as the owner of the code stored at reevent.myshopify.com

because he opened the account. J. Browne, in his capacity as the owner of the code

and the Shopify account delegated the responsibility for administering the account

(communications with Shopify staff, payment of bills, and compliance with Shopify

procedures) to DRB.

30.     Subsection 1 of Section 7 of the STSA entitled "Intellectual Property and

Customer Content" expressly acknowledges that Shopify does "not claim any intellectual

property rights over the material you provide to the Shopify service," and subsection 4 of

Section 7 provides that "You retain ownership over all content that you submit to a Shopify

store," thus contractually representing and acknowledging that as the author of the code J.

Browne possessed the applicable 17 U.S.C § 106 exclusive rights granted to copyrighted

works within its custody.

31.    In order to develop the substantive content for the software, J. Browne consulted continuously with ASC and DRB. As stated above he delegated the administrative and accounting relationship with Shopify to his mother, DRB, who thereafter performed all of the accounting and administrative functions relative to the creation of the website. While J. Browne was the author, creator and owner of the code, DRB and his sister, ASC designed the website and created the substantive content for the website. ASC and DRB would send the artistic, design and substantive content to J. Browne, who would translate it to code, and deliver the code to Shopify so that Shopify could store the code on the internet in its capacity as the custodian and internet host for the code and the website.

32.    ASC worked 450 hours on the website between August 1, 2013 and June 1, 2013, which at the rate of $65 per hour represented a value of $29,250. ASC and DRB had an ongoing dialogue concerning logos, protocols, themes, carts, rental agreements, the privacy policy, coordination regarding construction of the website with J. Browne, and the development of a mission statement for the website. In each of these areas ASC focused on writing, research, and coordinating how information should be placed in and on the computer for use on the website. DRB focused on graphics and design. In the August to September 2013 to 2014 time period DRB worked approximately 1500 hours, which at a rate of  $75 per hour represented a value of $112, 500. In contrast, V. Zaslow spent approximately 30 hours working on the content of the website, most of which involved attending meetings in which DRB and ASC gave her progress reports to which she responded with objections, counter-proposals, or suggestions. J. Browne had no direct contact or dealings with V. Zaslow. V. Zaslow made no communications in which she provided substantive content to J. Browne for the website which J. Browne translated to

code and placed on the reevent.myshopify.com website, and V. Zaslow wrote none of the code which was placed on the Shopify website at reevent.myshopify.com.

33.     The minimal contribution which V. Zaslow made to the development and creation of the website relative to the contribution made by DRB and ASC is consistent with the OA which provided that ASB and DRB were responsible for creating and maintaining the website and that VZ was responsible for marketing and sales, which would not begin in earnest until after the website was launched.

34.     DRB borrowed $4,044 to pay for a computer that was necessary to construct the website and was to be used as a partial payment to J. Browne for the services he provided as a computer engineer. Of this amount $2,919 was repaid by ASC and DRB, while VZ contributed $1,125 to extinguish the debt incurred in purchasing the computer. In addition, as of June 1, 2014 ASC and DRB paid $170 for various applications necessary to establish the website, and $500 for office supplies (estimate for paper, ink, postage, and miscellaneous office supplies) in creating the content for the website.  In addition ASC and DRB have paid two thirds of the costs of the Shopify account; approximately $165 and Zaslow has paid approximately $100 (because J. Browne has been denied access to all the information in the Shopify file, pending resolution of the ownership issue, plaintiffs cannot gain access to the accounting information that would enable them to provide this information in a more precise manner).  Zaslow has failed to make any payments for sustaining the Shopify account since June 1, 2014, and DRB and ASC paid their share of the account for the months of June and July.

35.     V. Zaslow breached the Operating Agreement and violated her fiduciary duties owed her putative partners, ASC and DRB, by: 1) failing to make monthly payments

necessary to extinguish the debt for purchasing the computer and software applications; 2) failing to organize and register the LLC on a timely basis; while at the same time representing that this had been accomplished: 3) failing to fulfill her marketing obligations under the contract by failing to provide sufficient or timely information about Re-Event merchandise or services that needed to be included on the website by the date of its launch: 4) failing to provide both the information and input she was responsible for providing on a timely basis, thus unreasonably delaying the launch of the website by more than six months; 5) failing to prepare a marketing brochure for the products she wants to market on the web site, which was part of her overall failure to fulfill her marketing function for the website; and 6) reneging on her promise to provide ASC and DRB respectively with a 20% interest in Re-Event; 7) failing to communicate with Browne and Coleman at all for more than 5 weeks concerning the preparation and launch of the website, thereby abandoning the OA she had entered with ASC and DRB.

36.     Because of these breaches of contract and fiduciary duty and the fact VZ failed to incorporate REL and the ongoing conflict and distrust that had arisen between DRB and ASC on the one hand, and VZ on the other hand, ASC and DRB rescinded the Operating Agreement, but made a counter-proposal set forth in an An Amended Operating Agreement Between the Principals of ReEvent Enterprises, LLC, a copy of which is attached to Exhibit "A" as Exhibit "3."

37.     VZ responded to the Counter-proposal by stating that she had to retain a new lawyer. After her lawyer, Mr. Louis N. Marks ("Mr. Marks,") contacted the attorney for DRB and ASC, Mr. William T. Coleman III ("Mr. Coleman,") on behalf of VZ, Mr. Coleman wrote Mr. Marks a letter dated June 11, 2014, a copy of which is attached to the July

9,2011 letter, Exhibit "A," as Exhibit "4." In this letter, Mr. Coleman explained how and why VZ had breached the Operating Agreement, and proposed a methodology for either resolving the differences between the parties so they could move forward with the formation of an LLC or arrive at an agreement that would enable them to permanently sever their relationship.

38.       After receiving the Counter-Proposal for an Amended Operating Agreement VZ committed additional breaches of the original Operating Agreement by attempting to terminate the account for reevent.myshopify.com, which would make it impossible for J. Browne, ASC and DRB to continue their construction of the website, and under the terms of the STSA the request for termination would have authorized Shopify to delete all date on the website.  See Email Correspondence re: Shopify Account, attached as Exhibit "5" to the ASC Declaration (Exhibit "C" to the July 9,2011 letter attached hereto as Exhibit "A"[¶ 5 supra]).

39.       By email dated June 6, 2014, Monica Gallant, an attorney for Shopify, informed DRB, who administered the account pursuant to the delegation of J. Browne, that VZ had attempted to close the website. VZ's attempt to terminate the site, if not immediately halted, placed J. Browne, ASC and DRB at risk of losing the code and website which they together had constructed and were on the verge of launching. (Section 11, Paragraph 2 of the STSA  provides:  "Once cancellation is confirmed, all of your Store Content will be *immediately deleted* from the Service. Since deletion of all data is final please be sure that you do in fact want to cancel your account before doing so.") (emphasis supplied).

40.    In order to protect the code authored and developed by J. Browne, and the investment of time and money which J. Browne, ASC and DRB had made in the development and authorship of the website, DRB, who at the time was listed as the "owner" of the Shopify account, caused Ms. Zaslow to be denied access to the account.

41.    After denying Ms. Zaslow's access to the account, Mr. Marks wrote Mr. Coleman an email stating that it was "wrong" to deny Ms. Zaslow access to the account, to which Mr. Coleman responded by email dated June 18, 2014, in which he explained that the only reason Ms. Zaslow had been denied access to the account was because without the consent of J. Browne, ASC or DRB, V. Zaslow had unilaterally attempted to terminate the account, which brought the construction of the website to a halt, and jeopardized the entire investment which J. Browne, ASC and DRB had made in the website.  See Email Correspondence re: Shopify Account (email dated June 18, 2014 from Coleman to Marks, attached as Exhibit "5" to Exhibit "C" of the July 9, 2011 letter, which is attached as Exhibit "A.")

42.    In the June 6, 2014 letter Ms. Gallant identified four types of documents that would be necessary to establish ownership of the account: scanned copy of business license; scanned copy of photo ID; last 4 digits of card on file; amount for last two bills. (See STSA, Section 4, paragraph 7: "In the event of a dispute regarding account ownership, we reserve the right to request documentation to determine or confirm account ownership. Documentation may include, but is not limited to, a scanned copy of your business license, government issued photo ID, the last four digits of the credit card on file, etc.")

43.     VZ evidently forwarded this documentation to Shopify, and on June 19, 2014 DRB received an email from Monica Gallant that stated: "Thank you for the email. Unfortunately, we have received sufficient documentation to prove that Valori is the rightful owner of the account. reevent.myshopify.com. I have since proceeded to transfer the ownership over to her. Regards, Monica." See Email Correspondence re: Shopify Account (email dated June 19,2014 from Coleman to Marks, attached as Exhibit "5" to Exhibit "C" of the July 9,2011 letter, which is attached as Exhibit "A.")

44.     Upon receipt of this email Mr. Coleman immediately wrote Ms. Gallant a letter advising her that DRB was going to forward the same documentation that had been requested in the initial email DRB had received from Ms. Gallant. The email also provided a more detailed explanation as to the basis for J. Browne's, ASC's and DRB's claim for ownership to the account. See Email Correspondence re: Shopify Account (email dated June 19, 2014 from Coleman to Gallant, attached as Exhibit "5" to Exhibit "C" of the July 9,2011 letter, which is attached as Exhibit "A.")

45.     By email dated June 19, 2014, a copy of which is attached as Exhibit "6" to Exhibit "C" of the July 9,2011 letter, which is attached as Exhibit "A," Ms. Gallant advised DRB that Shopify had received the information that Ms. Gallant had identified in her June 6, 2014 email that established conflicting claims of ownership and therefore in accordance with Shopify policies, it was denying access to the account to both parties until the conflicting claims were resolved.

46.     V. Zalow's initial response to these events is that she wanted to do everything she could to resolve the situation and to work out an arrangement where the

parties could go forward with the formation of a new company. She, among other things, agreed that the ownership interest in a new company would be divided evenly between all three partners. VZ, DRB, and ASC met on Saturday June 21st, 2014, after which DRB and ASC submitted a written proposal to resolve the dispute which allowed VZ and J. Browne, ASC and DRB to have access to the data located at reevent.myshopify.com (which was the status quo before the dispute began), but neither VZ or any of her attorneys purporting to represent her ever responded to the proposal. Indeed, neither VZ or any type of representative have attempted to initiate a discussion with Mr. Coleman, J. Browne, ASC or DRB concerning the website, the formation of a new business, or on any other topic since June 21, 2014. Since June 21, she has failed to return or respond to any of the telephone calls or written communications made by ASC and DRB to her concerning the website or the organization of the business during this period, and she has stopped paying her share of the startup costs. This conduct, and the fact she attempted to unilaterally close and terminate the shopify website without the consent or permission of J. Browne, ASC or DRB, evinces a clear purpose and intent to abandon her obligations under the OA.

47.     As described in ¶s 5 to 9 of this Complaint when it became clear that VZ was not going to respond to plaintiffs proposal for reaching a compromise that would have enabled VZ and J. Browne, ASC and DRB to gain access to the code located at reevent.myshopify.com, counsel for J. Browne, ASC and DRB sent Shopify the July 9,2011 letter, attached as Exhibit "A," which was supported by the sworn Declarations of J. Browne, ASC, and DRB, which conclusively established that J. Browne was the author of the code which Shopify held in its custody as the internet host for the website, and that under the terms and conditions of the Shopify Service Agreement J. Browne owned the

21

code because he opened the website.

48.    The July 9,2011 letter and declarations also conclusively established that VZ's claim of ownership was completely false and spurious because:  A) she played no role in authoring or creating the code for the website that was stored on the Shopify website; B) she did not open or establish the website: C) in comparison to ASC and DRB she made a negligible contribution to the substantive content of the website: D) the only grounds upon which VZ claimed an ownership interest in the account, code or website which she attempted to terminate without the consent of her putative partners was the OA, which never came into effect because she breached her fiduciary duties to her putative partners, ASC and DRB, by failing to file the documents necessary to establish REL, which was a condition precedent in order for the OA to take effect, and then misrepresented to her putative partners that she had taken the actions necessary to form an LLC, when in fact she knew she failed to take the necessary actions to organize REL as an operational corporation; E) and even if the OA were operational, VZ has breached her obligations under the contract by failing to pay her share of the start up costs, failing to perform her marketing duties under the OA in a timely manner which caused a 6 month delay in the launch of the website, attempting to close the Shopify account without the consent of J. Browne, DRB or ASC, which if successful would have caused the elimination and destruction of the code authored by J. Browne which would have also expunged the substantive content to the website developed, authored and created  by ASC and DRB.

49.    VZ knew that J. Browne had a contract with Shopify to serve as the internet host for the website, and that J. Browne had an advantageous contractual relationship with Shopify that was necessary and essential in order to establish, create develop, construct

and maintain a website that could be used by prospective users and customers on the internet.

50.     When asking to terminate the reevent.myshopify account without the knowledge, permission or consent of J. Browne, ASC and DRB, whom she knew to be the true owners of the code, the website, and the reevent.myshopify.com account, she knew her own claim of ownership was false, untenable and deceptive, and the mere act of making this spurious claim could have resulted of ownership in the immediate deletion and destruction of the code and the website. Even though plaintiffs prompt actions prevented the destruction of the website, V. Zaslow knows that her continued assertion of a false claim of ownership to the code and the website has and will continue to deny plaintiffs access to the code and the website so long as she persists in making what she knows is a patently false claim of ownership.  By engaging in this unethical, misleading, dishonest and deceptive conduct in order to prevent plaintiffs from benefiting from their current and prospective contracts with Shopify, VZ has intentionally interfered with the existing contractual relationship and the advantageous contractual relationships between J. Browne and Shopify, as well as the collective current and prospective contractual relationship that exists collectively between J. Browne, ASC and DRB with Shopify. By this conduct, VZ has breached the exclusive rights which J. Browne possessed as the author of the code, and which J. Browne, ASC and DRB possess as the joint authors of the website located at revent.myshopify.com by denying them, individually and collectively, access to the website held in trust by Shopify located at reevent.myshopifycom in its capacity as the internet host for the website that was collaboratively authored by J. Browne, ASC and DRB. This wrongful conduct by VZ infringed upon the rights possessed by J. Browne, ASC and DRB

under the federal copyright law. !7 USC § 101, et seq. (see17 USC § 102(a) and §106).

51.     Shopify rejected the request in the July 9,2011 letter for it to declare J. Browne the owner of the reevent.myshopify.com, and to reject VZ's claim of ownership of the website.

52.     Shopify also rejected the proposal of J. Browne, ASC and DRB set forth in the July 9,2011 letter that Shopify allow J. Browne, ASC and DRB to have access to the code in order that J. Browne be given the opportunity to download the code from the reevent.myshopify.com address, so that he could obtain access to the code he had created, which he could then use to open another website under a different uniform resource locater to which VZ would not have access, and VZ could thereafter have exclusive access to the website located at reevent.myshopify.com.  Shopify rejected both proposals on the grounds that as a matter of policy "Disputes that arise between business partners need to be settled outside of Shopify."  Shopify, while not contesting the bona fides of plaintiffs ownership of the code, the website or the account, nonetheless advised plaintiffs that the only way they could gain access to the intellectual property it held in trust for them was to sue Shopify and V. Zaslow.

53.     As a consequence of this decision J. Browne, ASC and DRB were prevented from gaining access to the code located at reevent.myshopify.com, which brought all work on the construction of the website to a halt, thus causing irreparable harm to the plaintiffs by indefinitely delaying the time by which they would be able to launch the website and begin to generate a cash flow from the substantial investment of time, effort and money they had already contributed to the formation of the website.

54.     Since this resolution sustained the status quo, VZ obtained a substantial

benefit from this disposition because until counter relief is obtained she has succeeded in achieving her objective of closing down the website which request generated Shopify's engagement in this dispute in the first instance. A "neutral" resolution would have been one which allowed both parties to have access to the website, as plaintiffs had proposed in the July 9,2011 letter.

55.    Section 4. Paragraph 5 of STSA, Exhibit "B," provides " Shopify retains the right to determine, in our sole judgment, rightful account ownership and transfer an account to the rightful owner. If we are unable *to reasonably* determine the rightful account owner, Shopify reserves the right to temporarily disable an account until resolution has been determined between the disputing parties."(emphasis supplied)" Despite the broad discretion granted to Shopify by this provision, Shopify nonetheless violated this clause by arbitrarily, capriciously, frivolously and *unreasonably* denying J. Browne's claim of ownership.

56.    First, while the clause grants Shopify the sole right to exercise its discretion in making decisions regarding ownership, it nonetheless imposes an obligation upon Shopify to exercise its discretion. Here, Shopify expressly refused to exercise its discretion at all by refusing to even consider the merits of J. Browne's claim of ownership on the grounds it involved a dispute between partners.

57.    Second, Shopify's refusal to consider the merits of J. Browne's claim on the grounds it involved a dispute between partners is arbitrary and capricious because Shopify has not and cannot identify any preexisting policy which exempts disputes between partners from determinations as to who is the lawful owner of an account and there is nothing within the four corners of the STSA which exempts disputes between partners from

a determination of ownership.

58.     Third, as made clear in email correspondence to Shopify identified in  ¶ 7 of this Complaint, the refusal to consider J. Browne's claim of ownership to the website is arbitrary, capricious, frivolous and unreasonable because J. Browne's claim of ownership to the code located at reevent.shopify.com was based on the fact he authored the code and opened the website, and since J. Browne was never a partner with VZ or ASC and DRB, his claim of ownership was in no way predicated upon or  dependent upon the fact he was a partner with VZ,  ASC or DRB.

59.     Fourth, Section 4. Paragraph 5 of the STSA makes clear that Shopify is authorized to disable an account only if it is "unable *to reasonably determine"* the ownership of the account. Shopify's conduct in refusing to make a determination of ownership in this instance was patently unreasonable. Shopify received a declaration from J. Browne subject penalties of perjury under 28 USC § 1728 stating that he was the author of the code located at reevent.myshopify.com and he opened the account. If either of these facts were true, ownership of the account would have been conclusively established with J. Browne under the federal copyright law or under Section 2 Paragraph 1 of the STSA, Exhibit "B."  However, despite this record, Shopify rejected the Browne claim of ownership without even requiring VZ to respond to the facts set forth in the J. Browne Declaration.  Unless VZ contested these facts under oath, Shopify could reach no reasonable conclusion other than J. Browne was lawful owner of the reevent.myshopify.com account. Shopify's decision to continue to disable the account without requiring VZ to at least dispute or contest the factual allegations that J. Browne authored the code and opened the website, was unreasonable, arbitrary, capricious, and

an abuse of discretion.

60.     The conduct and violations of federal copyright law and state common law by Shopify and VZ which are described above, have individually and in conjunction with each other inflicted irreparable harm, injury and damage upon plaintiffs because this unlawful conduct has prevented the plaintiffs from gaining access to the code and the website in which they have made a substantial investment in the last ten months, which in turn has prevented them from completing the construction of the website, the launching of the website, and using the website to generate income.  Plaintiffs are therefore entitled to declaratory relief, a preliminary injunction and a permanent injunction prohibiting V. Zaslow and Shopify, individually or in conjunction with each other, from blocking plaintiffs access to the code, the website, or the account located at reevent.myshopify.com, based on any claim of ownership made by V. Zaslow, awarding compensatory and special damages for the violations of federal statutory and state law described above, and awarding punitive damages, and costs, including the payment of attorneys fees, for violations of federal copyright law and defendants' bad faith, capricious, unreasonable, willful, and reckless disregard of Plaintiffs common law rights in order to deter V. Zaslow and Shopify from engaging in similar conduct in the future.

### E. STATEMENT OF CLAIMS

### COUNT I

**J. Browne v. Shopify and Valori  Zaslow**
**Federal Copyright Law, 17 USC § 101 et seq.,**
**and Declaratory Judgment Act, 28 USC § 2201**

61.     Plaintiff, J. Browne, incorporates by reference the allegations contained in Paragraphs 1 to 60 of the Complaint.

62.     Pursuant to the federal copyright law 17 USC § 101 *et seq*, and 28 USC § 2201, Plaintiff, J. Browne, requests that the Court enter Judgment in his favor declaring that:

A)   J. Browne is the author of the code within the meaning of 17 USC §102(a) located at reevent.myshopify.com;

B)     Jonathan Browne, as the author of the code, is the "owner" of the code for purposes of federal copyright law and therefore possesses the exclusive rights of copyright ownership enumerated at of 17 USC §106, including, i) the "right to reproduce the copyrighted work in copies;" ii) to "prepare derivative works based on the copyrighted work;" iii) to "distribute copies…of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending," iv) and "to display the copyrighted work publicly:"

C)     Shopify, who held possession of the code solely because it served in a position of trust as the Internet custodian for the copyright protected materials authored by Jonathan Browne, violated the exclusive rights conferred to Jonathan Browne under §106 by denying J. Browne access to the code which he had authored, thereby infringing upon J. Browne's rights as the author and owner of the code stored at revent.myshopify.com:

D)     VZ infringed upon J. Browne's exclusive rights of copyright ownership conveyed by § 102(a) and § 106 of the federal copyright law by willfully, purposely, knowingly and/or with reckless disregard of plaintiffs rights  making a bad faith, false, and spurious claim of ownership to the code when she knew she had not written or authored the code, which caused Shopify to deny Jonathan Browne access to the code

which he created and persisted in this course of conduct after she and her attorney received the July 9,2011 letter to Monica Gallant which spelled out in detail the reasons VZ could make no legitimate claim of ownership to the code. Receipt of this letter by V. Zaslow and her attorney precludes any defense based on lack of knowledge of the facts or the law.

E)   VZ is not the author of the code located at revent.myshopify.com, none of the rights of authorship have been conveyed to her by license or agreement, she possesses none of the § 106 exclusive rights of copyright ownership, and has no standing to claim ownership of the code located at revent.myshopify.com.

63.   Plaintiff further prays that judgment be entered in his favor declaring that J. Browne and J. Browne alone is the owner of the code awarding preliminary and permanent injunctive relief prohibiting Shopify individually or in conjunction with or pursuant to the request or demand of VZ from denying Jonathan Browne access to the code he authored which is currently located at reevent.myshopify.com, as well as compensatory, punitive, and special damages under 17 U.S.C § 504(c) for the harm and losses incurred as a result of the unlawful denial of access to his own intellectual property by Shopify and VZ, and an award of the costs, including attorneys fees against Shopify and VZ for bringing this action which the court is authorized to award under 17 U.S.C § 505, for which damages and costs Shopify and VZ are individually and jointly and severally liable.

### COUNT II

**J. Browne, D. Browne and A. Coleman v. Shopify and Valori  Zaslow**
**Federal Copyright Law, 17 USC § 101 et seq.,**
**and Declaratory Judgment Act, 28 USC § 2201**

64.    Plaintiffs, J. Browne, ASC and DRB incorporate by reference the allegations contained in Paragraphs 1 to 63 of the Complaint.

65.    Pursuant to the federal copyright law 17 USC § 101 *et seq*, and 28 USC § 2201, Plaintiffs requests that the Court enter Judgment in their favor declaring that:

A)    Plaintiffs. ASC and DRB collaborated with plaintiff J. Browne within the meaning of 17 USC §102(a) in authoring the substantive content of the website which is currently located at reevent.myshopify.com for which J. Browne wrote the code.

B)    As the joint authors of the website, each collaborator is the "owner" of the website for purposes of federal copyright law and therefore jointly and severally  possess the exclusive rights of copyright ownership enumerated at 17 USC §106, including, i) the "right to reproduce the copyrighted work in copies;" ii) to "prepare derivative works based on the copyrighted work;" iii) to "distribute copies…of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending," Iv) and "to display the copyrighted publicly:"

C)    Shopify, who held possession of the website solely because it served in a position of trust as the custodian for the copyright protected materials authored by the plaintiffs in its capacity as the internet host for the website, violated the  exclusive rights conferred to the plaintiffs under §106 by denying them, individually and collectively, access to the website which they jointly authored, thereby infringing upon the rights plaintiffs jointly possessed as the authors and owners of the website stored at revent.myshopify.com. Shopify's exclusion of plaintiffs from the website has prevented

them from completing the copyrighted work or launching it as a website, which has in turn prevented them from earning revenue or receiving income from the website.

D)   VZ infringed upon plaintiff's exclusive rights of copyright ownership conveyed by § 102(a) and § 106 of the federal  copyright law to the website by willfully, purposely, knowingly or with reckless disregard making a bad faith, false, and spurious claim of ownership to the website when she knew she had not written or authored the code or content for the website, which caused Shopify to deny plaintiffs access to the website which they had jointly created, and persisted in this course after she and her attorney received the July 9,2011 letter to Monica Gallant which spelled out in detail the reasons VZ could make no legitimate claim of ownership to the website. Receipt of this letter by V. Zaslow and her attorney precludes any defense based on lack of knowledge of the facts or the law.

E)   VZ is not the author of the website located at revent.myshopify.com, none of the rights of authorship have been conveyed to her by license or agreement, she possesses none of the § 106 exclusive rights of copyright ownership, and has no standing to claim ownership of the website located at revent.myshopify.com.

66.   Plaintiffs further pray that judgment be entered in their favor awarding preliminary and permanent injunctive relief prohibiting Shopify individually or in conjunction with or pursuant to the request or demand of VZ from denying plaintiffs access to the website they jointly authored which is currently located at reevent.myshopify.com, as well as compensatory, punitive and special damages under  17 U.S.C §  504(c)od the federal copyright law for the harm and losses incurred as a result of the unlawful denial of access

31

to their own intellectual property by Shopify and VZ, and an award of the costs, including attorneys fees against Shopify and VZ for bringing this action which the court is authorized to award under 17 U.S.C § 505, for which damages and costs Shopify and VZ are individually and jointly and severally liable.

## COUNT III

### J. Browne v Shopify
### Breach of Contract
### Under Pennsylvania Common Law
### And the Declaratory Judgment Act, 28 USC 2201

67.    Plaintiff, J. Browne, incorporates by reference the allegations contained in paragraphs 1 to 66 of the Complaint as if fully set forth herein.

68.    Pursuant to the common law of Pennsylvania, and 28 USC § 2201, Plaintiff, requests that the Court enter Judgment in their favor declaring that:

A)    J. Browne is the "owner" of the Shopify account currently located at reevent.myshopify,com because he signed up for the account by opening it. Section 2, Paragraph 1 of the  "Account Activation" Section of the Shopify Terms of Service Agreement prepared by Shopify, a copy of which is attached to the Complaint as Exhibit "B," provides;

> Subject to section 2.2, the person signing up for the Service **will be the contracting party ("Account Owner")** for the purposes of our Terms of Service **and will be the person who is authorized to use any corresponding account we may provide to the Account Owner in connection with the Service.**(emphasis supplied)

B)    Shopify breached STSA  by refusing to recognize J. Browne as the owner of the reevent,myshopify.com account even though the undisputed evidence of record showed that J. Browne opened the account, the information as to who opened the

account is, or should be maintained in Shopify's own records, and Shopify denied J.
Browne's claim of ownership without requiring VZ to respond to J. Browne's sworn
statement that he opened the account, or finding out whether VZ contested in any way J.
Browne's assertion that he opened the account.

   C)  Shopify breached the STSA by arbitrarily, capriciously, frivolously, and
unreasonable  denying access to the account to J. Browne on the grounds that a dispute
between partners had to be resolved outside of the Shopify process because: i) Shopify
reliance on its contention that this dispute involved a dispute a between partners was used
as a pretext for failing to exercise its discretion at all and side stepping its obligation to act
reasonably and make a good faith determination as to who was the true owner of the
account, ii) Shopify has failed to identify any policy or provision within the STSA which
exempts disputes between partners from a determination as to who was the true owner, as
exemplified by the fact Shopify was perfectly willing to engage itself in a dispute between
partners when it notified DRB, a partner,  that ownership was being transferred to VZ, her
putative partner; iii) J. Browne and VZ were never partners, and  therefore Shopify's
decision to deny Browne access to the account which he opened was based on a patently
obvious and erroneous factual premise, and; iv) J. Browne's claim to ownership was based
on his sworn declaration that he was the author of the code and that he opened
reevent.myshopify.com so that Shopify could serve as the internet host for the code he
created, and Shopify rejected J. Browne's  claim without making any inquiry to find out
whether  VZ  contested J. Browne's sworn testimony that he wrote the code and opened
the website, or whether VZ advanced any contention that she wrote the code or opened
reevent.myshopify.com.

D)      Shopify's willful, and or reckless breach of contract violated the covenant of good faith and fair dealing that adheres to every commercial contract.

69.      Plaintiff further prays that judgment be entered in his favor declaring that Shopify breached the STSA , and the covenant of good faith and fair dealing that adheres to every commercial contact, that J. Browne and J Browne alone is the owner of the code and the reevent.myshopify,com account, awarding preliminary and permanent injunctive relief prohibiting Shopify individually or in conjunction with or pursuant to the request or demand of VZ from denying J. Browne access to the code he authored which is currently located at reevent.myshopify.com, as  well as compensatory, and special damages  for the harm and losses incurred as a result of the unlawful denial of access to his own intellectual property by Shopify, and an award of punitive damages for beach of the covenant of good faint and fair dealing that adheres to every commercial contract and costs, including an award of attorneys fees, in order to deter Shopify and others who are similarly from engaging in such conduct in the future.

## COUNT IV

### A. Coleman and D. Browne  v.  V. Zaslow
### Declaration That Operating Agreement Is Null and Void Due
### To Failure To Fulfill Condition Precedent For Enforcement of
### Contract and /or For Breach of the Operating Agreement
### Pennsylvania Common Law and Declaratory Judgment Act, 28 USC § 2201

70.      Plaintiffs, ASC and DRB, incorporate by reference the allegations contained in Paragraphs 1 to 69 of the Complaint as if fully set forth herein.

71.      Pursuant to the common law of Pennsylvania and the Declaratory Judgment Act, 28 USC § 2201, ASC and DRB pray that the court enter judgment declaring that:

A)    A condition precedent to the enforcement of the Operating Agreement executed by ASC, DRB and V. Zaslow was the formation of Revent Enterprises LLC, which was never formed due to the failure of V. Zaslow to take the steps  necessary to organize REL as she had promised to do.  Because it is now clear that the OA will never be formed the condition precedent for the enforcement of the OA ------the formation of REL------ can never be fulfilled, thus rendering the OA, unenforceable, null, void and of no further force or effect.

B)    Defendant, V. Zaslow cannot rely upon the OA as a basis for establishing an ownership interest in the code or the website because it never took effect as an operative contract.

C)     Assuming *arguendo* that  the OA was enforceable at some point in time ( ASC and DRB contend that it never took effect because REL was never formed), it is currently of no further force and effect because of the breaches of contract and fiduciary duty committed by V. Zaslow, including, but not limited to: i) VZ's  failure to pay her share of the start up costs, ii) her failure to perform the marketing duties imposed upon her by  the OA in a timely manner which caused a 6 month delay in the launch of the website; iii) attempting to close the Shopify account without the consent of DRB or ASC, which if successful would have caused the elimination and destruction of the code authored by J. Browne and the deletion and destruction of the substantive content to the website developed, authored and created by ASC and DRB; iv) by making a spurious bad faith claim of ownership to the code and the website which has precluded J. Browne, ASC and DRB from continuing their work on the website, thereby preventing and substantially delaying the launch of the website which remains at reevent.myshopify.com; and v) by

abandoning the OA  by virtue of her failure to perform any of her duties under the OA since May 21, 2014, as reflected in the fact she has had no communications with ASC or DRB concerning the contract or the website despite numerous attempts by ASC and DRB to discuss issues related to the creation, maintenance, financing and performance of the website with V. Zaslow since May 21, 2014.

       D)      V. Zalow's breaches of her obligations under the OA were made in bad faith, wantonly, willfully, and with reckless disregard of plaintiffs rights thereby warranting the imposition of punitive damages and an award of costs, including the payment of attorneys fees, in favor of  ASC and DRB in order to deter V. Zaslow and others who are similarly situated from engaging in similar bad faith conduct in the future,

       E).      V. Zaslow's conduct described above constitutes a violation of the covenant of good faith and fair dealing that adheres to every commercial contract

       72.      Plaintiffs further pray that judgment be entered in their favor declaring that the OA is null and void due to the failure to fulfill the applicable conditions precedent, and/or that the OA is null and void due to V. Zaslow's breaches of contract, that Zaslow violated the covenant of good faith and fair dealing that adheres to every commercial contract, that plaintiffs are exonerated from any further performance obligations under the OA due to V. Zaslow's breaches, awarding preliminary and permanent injunctive relief prohibiting V. Zaslow from denying ASC and DRB access to the website currently located at reevent.myshopify.com which ASC and DRB authored by making any claim of ownership to the code or the website, as well as compensatory damages for the harm and losses incurred by plaintiffs as a result of V. Zalow's  breaches of the OA and punitive damages

and an award of costs, including the payment of attorneys fees, in order to deter bad faith

conduct in the future by Zaslow or others who are similarly situated.

## COUNT V

### J. Browne v. Shopify
### Breach of Covenant of Good Faith and Fair Dealing
### Under Pennsylvania Common Law and the Declaratory
### Judgment Act. 28 USC § 2201

73.    Plaintiffs, J. Browne, ASC and DRB, incorporate by reference the allegations

contained in Paragraphs 1 to 70 of the Complaint as if fully set forth herein.

74.    Pursuant to the common law of Pennsylvania and the Declaratory

Judgment Act, 28 USC § 2201, Jonathan Browne prays that the court enter judgment

declaring that Shopify violated the covenant of good faith and fair dealing recognized as

part of every commercial contract in Pennsylvania by failing to recognize Jonathan Browne

as the owner of the code based on his undisputed status as the author of the code under

copyright law and the person who opened the account reevent.myshopify.com account,

which under the Shopify Terms of Service Agreement made Jonathan Browne the owner of

the code, and is therefore obliged to pay punitive damages for its bad faith, willful and or

reckless breach of contract arising from its denial of Jonathan Browne's request to access

the code he authored which Shopify held in trust as a custodian for J. Browne's intellectual

property in its capacity as an internet host for J. Browne's intellectual property and

copyright protected work.

75.    Plaintiffs therefore request that The Court award punitive damages to

Jonathan Browne and costs, including the payment of attorneys fees, by virtue of Shopify's

bad faith, wanton, willful and reckless disregard of J. Browne's rights in violation of the

breach of the covenant of good faith and fair dealing in order to deter Shopify and others who are similarly situated from engaging in comparable conduct in the future.

## COUNT VI

### A. Coleman and D. Browne  v.  V.  Zaslow
### Breach of Covenant of Good Faith and Fair Dealing
### Under Pennsylvania Common Law and the Declaratory
### Judgment Act , 28 USC § 2201

76.     Plaintiffs, ASC and DRB, incorporate by reference the allegations of Paragraphs 1 to 75 as if fully set forth herein.

77.     Pursuant to the common law of Pennsylvania and the Declaratory Judgment Act, 28 USC § 2201, ASC and DRB pray that the court enter judgment declaring that V. Zaslow violated the covenant of good faith and fair dealing recognized as part of every commercial contract in Pennsylvania when in reliance upon the OA she knowingly made a spurious and false claim of ownership to the website created, developed and authored by ASC and DRB in order to deny ASC and DRB access to the copyright protected work authored by ASC and DRB , with full knowledge that her actions were likely to result in the destruction of the code and the website that Shopify held in trust as the internet custodian for the plaintiffs, which constituted the primary asset that had been created in anticipation of the formation of REL, and by falsely  advising ASB and DRB that she had taken the steps necessary to organize REL as an LLC, when in fact she knew she had not organized REL as an LLC, and later admitted that she had lied to ASC and DRB as to the status of the formation of REL

78.     V. Zaslow's bad faith conduct has been the direct and proximate cause of plaintiffs inability to complete the website which has resulted in substantial financial harm to plaintiff because of the delay in launching the website, which has delayed the time at which

plaintiffs can begin to receive a return on the substantial investment they have already made in creating the website (more than $150,000).

79.     V. Zaslow can limit the delay damages which plaintiffs continue to incur merely by withdrawing what she knows is a spurious claim of ownership to the code and/or the website, but she nonetheless continues to press the claim even though she clearly has no interest in the website located at reevent.myshopify.com because she attempted to close the account which would have resulted in the destruction of the website. Since plaintiffs conduct is clearly not based on any attempt to achieve a result that will in any benefit to her, and is purposely calculated solely to inflict harm and injury upon the plaintiffs, this obtuse, gratuitous, obstinate, reckless, bad faith conduct can only be prevented by an award of punitive damages which will deter her and others who are similarly situated from engaging in highly injurious conduct for no legitimate reason. Plaintiffs, ASC and DRB, therefore request an award of punitive damages and costs, including an award of attorneys fees against V. Zaslow.

## COUNT VII

### J. Browne, A. Coleman and D. Browne  v.  V.  Zaslow
### Quantum Meruit and Equitable Distribution
### Pennsylvania Common Law and the
### Declaratory Judgment Act, 28 USC § 2201

80.     Plaintiffs, J. Browne, ASC and DRB, incorporate by reference the allegations set forth in Paragraphs 1 to 79 of the Complaint as if fully set forth herein.

81.     Pursuant to the common law of Pennsylvania and the Declaratory Judgment Act, 28 USC § 2201, J. Browne, ASC and DRB pray that the court enter judgment declaring that:

A)     Since the Operating Agreement never became effective and is null and void there is no contractual document which can be used to determine the ownership rights to the code and the website as between J. Browne. ASC, DRB and V. Zaslow these rights must be determined on the basis of federal copyright law, the STSA, and principles of quantum and equitable distribution.

B).     J. Browne has exclusive ownership rights to the code located at reevent.myshopify.com because under federal copyright law he is the author of the code and under the STSA he is the owner of the reevent.myshopify.com account because he opened the account.

C)     J. Browne shares an ownership interest  with ASC and DRB in the website as a whole because the three of them collaborated in creating the website;  J. Browne wrote the code based on the substantive content provided to him by ASC and DRB.

D)     J. Browne contributed in the range of  $25,000 to $35,000 of his time (at a rate of $100) to the formation of the website, and DRB contributed 1500 hours of her time at a rate of $75 per hour ( representing a value of $112, 500), and ASC contributed 450 hours of her time  at a rate of $65 per hour( representing a value of $29,250)  ASC and DRB together paid  majority of the costs for financing the project(which have been less than $6000).

E)     V. Zaslow's contribution to the formation  of the website have in comparison to J. Browne, ASC and DRB been, when considered individually or collectively, meager. She has worked no more than 30 hours on the website (which even if the generous hourly rate of  $150 per hour were applied [more than twice as much as DRB or

ASC, and much more than plaintiffs believe would be appropriate] would have a value of $4500. Most of the time she contributed to working on the creation of the website involved her participation in meetings during which DRB and ASC provided her with updates on the progress of the website, and suggestions she made in response to these briefings.   She covered approximately $40% of the $6000 start up costs, but ceased paying for such costs after May of 2014.

F)     Even though she made a comparatively negligible contribution in terms of time and money to the formation of the website  principles of equitable distribution preclude her from qualifying for even a small percentage of ownership because she asked Shopify to terminate the reevent.myshopify.com account without the consent or permission of any of the plaintiffs , which, under the express provisions  of the STSA would have resulted in the deletion and destruction of all the data located in the account. As a practical matter this would have destroyed the only tangible asset that existed as a result of the more than $160,000 investment of time and money made by J. Browne, ASC and DRB.

G)     As a consequence of the foregoing,  J Browne, ASC and DRB share a joint ownership interest in the website as a whole(as distinct from J. Browne's exclusive interest in the ownership of the code), and V Zaslow is equitably estopped from making any claim of  ownership to the code, the website, or the account , whatsoever.

82.     Plaintiffs further pray that judgment be entered in their favor awarding preliminary and permanent injunctive relief prohibiting V. Zaslow from denying ASC and DRB access to the website currently located at reevent.myshopify.com which ASC and DRB authored on the grounds that she is the owner of the code or the website, or making any claim that she possesses an ownership interest in the code or the website, a

41

declaration exonerating DRB and ASC from any further obligation to honor or comply with the provisions of the OA, as well as compensatory damages for the harm and losses incurred by plaintiffs as a result of  V. Zalow's claim of ownership to Shopify.

## COUNT VIII

### A. Coleman and D. Browne  v.  V.  Zaslow
### Breach of Fiduciary  Duty
### Under Pennsylvania Common Law and
### the Declaratory Judgment Act , 28 USC § 2201

83.     Plaintiffs, ASC and DRB, incorporate by reference the allegations set forth in Paragraphs 1 to 82 of the Complaint as if fully set forth herein.

84.     Pursuant to the common law of Pennsylvania and the Declaratory Judgment Act, 28 USC § 2201, ASC and DRB pray that the court enter judgment declaring that:

A)     Even though the Operating Agreement never took effect and is now null and void due to the failure to organize REL as a registered limited liability corporation, between the date of the execution of the OA and the time it became clear that REL was not going to be registered, V. Zaslow, ASC and DRB expended time and effort creating a website in anticipation of the formation of REL during which time they worked with each other as putative partners,

B)     As putative partners V. Zaslow, ASC, and DRB owed a fiduciary duty to each of their respective putative partners requiring them to treat each other honestly, making full disclosure of material facts that were germane to the operation of the contemplated enterprise, and not to deliberately mislead or lie to a partner concerning facts material to the operation of the enterprise.

42

C)      V. Zaslow beached the fiduciary duty she owed ASC and DRB by: i) after insisting that she and she alone take the responsibility for organizing and registering REL as a limited liability company, knowingly making the false representation to ASC and DRB that she had taken the steps necessary to organize and register REL, when in fact she knew she had not organized or registered REL and subsequently explained her failure to do so was based on the fact that the website had not yet been launched and it was "too expensive;" ii) she knowingly made a false and spurious claim to Shopify that she was the owner of the code and the website when she knew she had not authored or written the code, opened the reevent.myshopify.com account, or provided anything but an incidental and negligible amount of services and financing that were dedicated to the formation and creation of the  website; iii) asking Shopify to terminate the reevent.myshopify.com, when she knew, or should have known that under the STSA its standard practice was to delete all of the data located at the website, which would have caused the destruction of the only tangible asset that existed as a result of the more than $160,000 investment  made by J. Browne, ASC and DRB towards the creation of the website: iv) deliberately undermining the purpose for which the Operating Agreement was entered by purposely taking actions which were calculated to prevent J. Browne, ASC and DRB from completing the website, which she knew would cause a substantial delay in the launch of the website, which was the primary purpose for which the OA was entered; and v) abandoning and failing to perform her basic functions and obligations under the OA, and by refusing to speak with or communicate with her putative partners for extended periods of time.

85.     ASC and DRB pray that judgment be entered in their favor declaring that V. Zaslow breached the fiduciary duties which she owed to ASC and DRB, exonerating ASC

43

and DRB from any further obligation to comply with the Operating Agreement because of Zaslow's breaches of fiduciary duty, awarding preliminary and permanent injunctive relief prohibiting V. Zaslow from denying ASC and DRB access to the website currently located at reevent.myshopify.com which ASC and DRB authored on the grounds that she is the owner of the code or the website, or making any claim that she possesses an ownership interest in the code or the website, and an award of compensatory damages for the harm and losses incurred by plaintiffs as a result of the delay in completing and launching the website arising from Zaslow's breaches of fiduciary duty.

### COUNT IX

**J. Browne, ASC and DRB v. Shopify**
**Breach of Fiduciary Duty**
**Under Pennsylvania Common Law and**
**the Declaratory Judgment Act, 28 USC § 2201**

86.     Plaintiffs, J. Browne, ASC and DRB incorporate by reference the allegations set forth in Paragraphs 1 to 85 of the Complaint as if fully set forth herein.

87.     Pursuant to the common law of Pennsylvania and the Declaratory Judgment Act, 28 USC § 2201, J. Browne, ASC and DRB pray that the court enter judgment declaring that:

A)     Shopify gained custody and control over the intellectual property created by Jonathan Browne, ASC and DRB which it held in trust for J. Browne in its capacity as the internet host for the code authored by Jonathan Browne and the website that was authored as the result of a collaborative effort between J. Browne, ASC  and DRB, which had copyright protection and in which the exclusive rights of 17 USC 106 were vested.

44

B)     As the custodian and trustee of J. Browne's, ASC's and DRB's intellectual property Shopify held a position of special trust and confidence which imposed on it the duties of a trustee to administer the trust in the interest of the administration of the beneficiary, to keep and render clear and accurate accounts of the administration of the trust, and take reasonable steps to take, keep control of, and preserve property.  One who acts as a trustee may incur fiduciary obligations even when no trust has been created.

C)     Shopify breached its fiduciary duty to J. Browne, DRB and ASC by unreasonably denying them access to their own intellectual property by virtue of its failure to even explore the question of whether J. Browne was the owner of the code because he was the author of the code or that he was the owner of the account because he opened the account with Shopify,

D)     Shopify breached its fiduciary duty because it failed and declined to offer any justification that applied to J. Browne for its failure to make the simple inquiries that would have readily established that J. Browne was the owner of the code and the owner of the account located at reevent.myshopify.com, much less an explanation for  its refusal to do so that is remotely reasonable or plausible.

E)     Shopify breached its fiduciary duty to DRB and ASC because its refusal to consider the request of DRB and ASC to access the intellectual property which they had created as a result of their collaborative authorship of the website with J. Browne on the grounds it had no authority to resolve a dispute between partners was capricious, arbitrary and unreasonable. There is nothing in any Shopify policy or the Shopify Service Agreement which in any way limits its authority to resolve a dispute between partners, and as shown above all the evidence of record conclusively demonstrates that ASC and DRB have a

legitimate ownership interest based on their collaboration with J. Browne, that J. Browne delegated administration of the reevent.myshopify.com account to DRB, under principles of equitable distribution and quantum meruit J. Browne, ASC and DRB had a joint interest in the ownership of the website, and V. Zaslow had absolutely no legitimate basis for claiming ownership in the website.

88.     J. Browne, ASC and DRB pray that judgment be entered in their favor declaring that Shopify breached the fiduciary duties which it owed to J. Browne, and awarding preliminary and permanent injunctive relief prohibiting Shopify from denying J. Browne access to the code which Shopify holds in trust for J. Browne which is currently located at reevent.myshopify.com, and to J. Browne in his capacity as the representative of the joint interest of J. Browne, ASC and DRB who collectively collaborated to author the website located at reevent.myshopify.com  from having access to the website which Shopify holds in trust for J. Browne, DRB and ASC,  awarding J. Browne, ASC and DRB compensatory and special damages  for the losses plaintiffs have incurred as a result of the breaches of fiduciary duty by Shopify which has caused them to incur substantial harm as a result of their continued inability to complete and ultimately launch the website as long as they are denied access to it.

## COUNT  X

### J. Browne, ASC, and DRB v.  Shopify
### Negligence
### Under Pennsylvania Common Law and
### the Declaratory Judgment Act, 28 USC § 2201

89.     Plaintiffs, J. Browne, ASC and DRB incorporate by reference the allegations set forth in Paragraphs 1 to 88 of the Complaint as if fully set forth herein.

90.     Pursuant to the common law of Pennsylvania and the Declaratory Judgment Act, 28 USC § 2201, J. Browne, ASC, and DRB pray that the court enter judgment declaring that:

A)     Shopify gained custody and control over the intellectual property created by Jonathan Browne, ASC and DRB  which it held in trust for J. Browne in its capacity as the internet host for the code authored by Jonathan Browne and the website that was authored as the result of a collaborative effort between J. Browne, ASC and DRB, which had copyright protection under the federal copyright law and in which the exclusive rights of 17 USC 106 were vested.

B)     As the custodian and trustee of J. Browne's, ASC's and DRB's intellectual property Shopify held a position of special trust and confidence which imposed upon it  fiduciary duties a duty to : i) administer the trust solely in the interest of the beneficiary; ii) to make full disclosure of material facts, iii); the duty to keep and render clear and accurate accounts of the administration of the trust; and iv) the duty to take reasonable steps to take, keep control of, and preserve the trust's property.

C)     Shopify breached these duties by unreasonably denying them access to their own intellectual property, and by : i) rejecting J. Browne's request for access to the code which he authored without first looking at its own records to find out whether he opened the account at reevent.myshopify.com which if properly maintained would have shown that J. Browne opened the account and was therefore the owner of the code and the account located at reevent.myshopify.com; ii)  finding out whether V. Zaslow contested the factual assertion contained in J. Browne's declaration that he and he alone wrote the code located at reevent.myshopify,com, which if true would have automatically vested ownership

of the code with J. Browne; iii) denying J. Browne's request for access to his account on the grounds that Shopify was precluded from engaging itself in a dispute between partners, when the plain facts showed that J. Browne was not a partner of V. Zaslow; iv)  refusing to consider the request of DRB and ASC to access the intellectual property which they had created as a result of their collaborative authorship of the website with J. Browne on the grounds it involved a dispute between partners because Shopify had already engaged itself in a dispute between partners by advising DRB that it was transferring ownership of the account to V. Zaslow, and there is nothing in any Shopify policy or the STSAS which in any way limits Shopify's authority to resolve a dispute between partners; v) ignoring and refusing to consider the uncontested evidence of record which showed that ASC and DRB had a legitimate ownership and/or management  interest in the website based on: (a) their collaboration with J. Browne, b) J. Browne's  delegation of the administration and management  of the reevent.myshopify.com account to DRB; c) under principles of equitable distribution and quantum meruit J. Browne, ASC and DRB had a joint interest in the ownership of the website because the they contributed the vast bulk of the services and financing necessary to create the website; and) d) V. Zaslow attempted to destroy this work by asking Shopify to terminate the reevent.myshopify.com account, which under Shopify contractual policies would have resulted in the deletion of the all data located at reevent.myshopify.com,  vi)  V. Zaslow had absolutely no legitimate basis for claiming ownership in the website because the Operating Agreement, the contract she relied upon to establish her ownership interest, never became operative because it was entered based on the condition precedent that REL be organized and registered as an LLC, which never occurred.

91.     Plaintiffs pray that judgment be entered in their favor declaring that Shopify negligently rejected plaintiffs request for access to their own intellectual property which it held in trust on behalf of plaintiffs in its capacity as the Internet host for the code and website located at reevent.myshopify.com, which was the proximate cause of the financial injury plaintiffs incurred arising out of their exclusion from access to their website which prevented them from completing and launching the website, and that plaintiffs be awarded compensatory damages for the pecuniary  harm they incurred that was proximately caused by Shopify's arbitrary, capricious, unreasonable and negligent conduct .

### COUNT XI

**A. Coleman and D. Browne v. V.  Zaslow**
**Negligence**
**Under Pennsylvania Common Law and**
**the Declaratory Judgment Act , 28 USC § 2201**

92.     Plaintiffs, J. Browne, ASC and DRB incorporate by reference the allegations set forth in Paragraphs 1 to 91 of the Complaint as if fully set forth herein.

93.     Pursuant to the common law of Pennsylvania and the Declaratory Judgment Act, 28 USC § 2201, J. Browne, ASC and DRB pray that the court enter judgment declaring that V. Zaslow's acts of misfeasance and nonfeasance described in Count IX were willful, wanton and carried out with malice and or reckless disregard of plaintiffs rights and in addition to compensatory damages warrants the imposition of punitive damages and costs, including an award for attorney's costs in order to deter plaintiff and others who are similarly situated from engaging in such conduct in the future.

A)      As putative partners and professional businesswomen working together V. Zaslow, ASC, and DRB owed a duty to each other of exercising reasonable

49

care in the performance of their partnership and professional duties before and after the formation of REL as an LLC.

B)      Zaslow failed to exercise reasonable care in the performance of her duties with respect to her partners, ASC and DRB, because: i) after insisting that she and she alone take the responsibility for organizing and registering REL as a limited liability company, she knowingly made the false representation to ASC and DRB that she had taken the steps necessary to organize and register REL, when in fact she knew she had not organized or registered REL and subsequently explained her failure to do so was because the website had not yet been launched and it was "too expensive;"  ii) she knowingly made a false and spurious claim to Shopify that she was the owner of the code and the website when she knew she had not authored or written the code, opened the reevent.myshopify.com account, or provided anything but a negligible amount of services and financing that were dedicated to the formation and creation of the website; iii) asking Shopify to terminate the reevent.myshopify.com, which she knew, or should have known that under the STSA its standard practice was to delete all of the data located at the website, which would have caused the destruction of the only tangible asset that existed as a result of the more than $160,000 investment  made by J. Browne, ASC and DRB towards the creation of the website: iv) deliberately undermining the purpose for which the Operating Agreement was entered by purposely taking actions which were calculated to prevent ASC and DRB from completing the website, and which she knew would cause a substantial delay in the launch of the website, which was the primary purpose for which the OA was entered; and v) abandoning and failing to perform her basic functions and obligations under the OA, and by refusing to speak with or communicate with her putative

partners for months at a time with respect to formation of the website or the business of REL, which made it impossible for ASC and DRB to do business with her and to complete or launch the website.

94.     ASC and DRB pray that judgment be entered in their favor declaring that V. Zaslow negligently performed the professional duties which she owed to ASC and DRB as their partner and as a professional businesswoman, and that the court make an award of compensatory damages for the pecuniary harm and proximately caused by V. Zalow's negligent conduct, including, but not limited to, the financial losses incurred by ASC and DRB as a result of the delays caused by V. Zaslow's negligent conduct which prevented them from completing or launching the website, and an award of preliminary and permanent injunctive relief prohibiting V. Zaslow from making any claim of ownership to the code, the website, or the account.

## COUNT XII

### J. Browne , ASC and DRB v.  Shopify
### Gross Negligence
### Under Pennsylvania Common Law and
### the Declaratory Judgment Act, 28 USC § 2201

95.      Plaintiffs, J. Browne, ASC and DRB incorporate by reference  the allegations set forth in Paragraphs 1 to 94 of the Complaint as if fully set forth herein.

96.     Pursuant to the common law of Pennsylvania and the Declaratory Judgment Act, 28 USC § 2201, J. Browne, ASC and DRB pray that the court enter judgment declaring that the negligent acts of misfeasance and nonfeasance, including, but not limited to, denying access to plaintiffs intellectual property which it held in trust for Shopify which are described in detail in Count X constituted gross negligence because

these acts were wanton, willful, and carried out with reckless disregard of plaintiffs rights because Shopify continued on the same course of action even after it had the opportunity to review the letter submitted by plaintiffs counsel on July 9,2011 (attached as Exhibit "A,") which explained in great detail the factual and legal reasons Shopify's refusal to allow plaintiffs to access the intellectual property it held in trust for them in its capacity as the internet host for the code and the website violated its duty of care to plaintiffs as well as the common law and federal statutory rights of the plaintiffs .

97.     Plaintiffs pray that judgment be entered in their favor declaring that Shopify's conduct constituted gross negligence because it was wanton, willful and carried out with reckless disregard of plaintiffs rights, and in addition to awarding plaintiffs compensatory damage in order to compensate them for the pecuniary harm they have suffered as a result of Shopify's wrongful conduct the court shall award punitive damages and costs, including an award of attorneys fees, in order to deter Shopify and others who are similarly situated from engaging in comparable conduct in the future.

## COUNT XIII

### ASC and DRB v. Zaslow
### Gross Negligence
### Under Pennsylvania Common Law and
### the Declaratory Judgment Act, 28 USC § 2201

98.     Plaintiffs, ASC and DRB incorporate by reference the allegations set forth in Paragraphs 1 to 97 of the Complaint as if fully set forth herein.

99.     Pursuant to the common law of Pennsylvania and the Declaratory Judgment Act, 28 USC § 2201, ASC and DRB pray that the court enter judgment declaring that the negligent acts of misfeasance and nonfeasance by V, Zaslow, including, but not limited to, attempting to close plaintiffs account with Shopify without the consent or

authority of plaintiffs and concocting a false claim of ownership to the account which has prevented plaintiffs from gaining access to their own website which has prevented them from completing or launching the website, which are described in detail in Count XI constituted gross negligence because these acts were wanton, willful and carried out with reckless disregard of plaintiffs rights, as evidenced by the fact V. Zaslow has continued to assert her false and spurious claims of ownership knowing the harm which her conduct has inflicted despite the opportunity she had to review the letter submitted by plaintiffs counsel on July 9,2011 (attached as Exhibit "A,") which explained in great detail the factual and legal reasons her conduct in making false claims of ownership violates her duty of care and other  common law and federal statutory rights of the plaintiffs .

100.    Plaintiffs pray that judgment be entered in their favor declaring that V. Zaslow's conduct constituted gross negligence because it was wanton, willful and carried out with reckless disregard of plaintiffs rights, and in addition to awarding plaintiffs compensatory damage in order to compensate them for the pecuniary harm they have suffered the court shall award punitive damages and costs, including an award of attorneys fees, in order to deter V. Zaslow and others who are similarly situated from engaging in comparable conduct in the future.

**XIV**

**J. Browne A. Coleman and D. Browne v.  V.  Zaslow**
**Intentional Interference With Existing Contractual Relations**
**Under Pennsylvania Common Law § 766, Restatement**
**of Torts (Second) and the Declaratory Judgment Act, 28 USC § 2201**

101.    Plaintiffs, J. Browne, ASC and DRB incorporate by reference the allegations set forth in Paragraphs 1 to 100 of the Complaint as if fully set forth herein.

102.     Pursuant to the common law of Pennsylvania, **§ 766, Restatement of Torts(Second)** and the Declaratory Judgment Act, 28 USC § 2201, J. Browne, ASC and DRB pray that the court enter judgment declaring that:

A)     J. Browne entered into a contractual relationship with Shopify for it to serve as the internet host for the code of a website which he collaboratively produced with ASC and DRB by opening a website for the code located at reevent.myshopify.com.

B)     Under Section 2.1 of the Shopify Service Agreement "the person signing up for the Service will be the contracting party ("Account Owner") for the purposes of our Terms of Service and will be the person who is authorized to use any corresponding account we may provide to the Account Owner in connection with the Service." Consequently, by signing up for the Service Jonathan became the "owner" of the account located at reevent.myshopify.com., and he established a contractual relationship with Shopify.

C)     In opening the account and establishing the contractual relationship with Shopify, J. Browne acted in two distinct capacities. First, he acted in his own capacity as the owner of the code that he placed on reevent.myshopify.com. because he and he alone wrote the code that was placed on reevent.myshopify.com., and as the sole author of the code J. Browne and J. Browne alone possessed an exclusive copyright protected interest in the code located at reevent.myshopify.com.

D)     J. Browne also collaborated with DRB and ASC in the creation of a website that was jointly authored by J. Browne, ASC and DRB, for which ASC and DRB provided the substantive content for the website they jointly authored which he translated to code so that the website could be stored on the internet while it was being constructed and

54

made available to the public on the internet after it was launched. Accordingly, J. Browne opened the Shopify account as the representative of the three person group who jointly collaborated to create the website, and by doing so established a second contractual relationship with Shopify as the representative of the group who jointly authored the website as a whole, thus bestowing a contractual relationship between Shopify and him and  ASC and DRB.

       E)    Shopify's  services were essential to the construction and ultimate use of the website because the only way in which J. Browne, ASC and DRB could jointly author and construct a website to which consumers would have access on the internet was through  Shopify's services as an internet host.  Once Shopify was selected as the internet it became prohibitively costly to transfer these services to another service provider because it would require plaintiffs to essentially recreate the website. Consequently, long term access to the account was an essential element to plaintiffs ability to construct, launch and maintain the code and website.

       F)    An actor is liable for intentional interference with contract if he or she " intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract". Rest. 2d Torts § 766 (1979).

       G)    V. Zaslow interfered with the contractual relations that existed between Shopify and J. Browne as the owner of the reevent.myshopify.com account in his capacity as the owner of the code and as the representative of himself, ASC and DRB who

collaborated in the authorship of the website by: i) attempting to terminate the revent.myshopy.com account with Shopify without seeking the consent or permission of J. Browne, ASC or DRB even though she knew, or should have known, that under the terms of the Shopify Service Agreement a request for termination of the account would cause Shopify to delete all data then existing on the account; and ii) by making, and continuing to make a claim of ownership to the account which she knew was false and spurious which caused Shopify to deny plaintiffs all access to the account. V. Zaslow knows that her persistence in pursuing a false claim of ownership has caused substantial pecuniary loss to the plaintiffs because it has prevented them from completing or launching the website in which they have invested more than $160,000.

103.    Plaintiffs pray that judgment be entered in their favor declaring that V. Zaslow intentionally interfered with plaintiffs existing contractual relations with Shopify.  and awarding damages for the pecuniary harm resulting from her interference, including, but limited to the loss of revenue arising from the delay in completing and launching the website caused by V. Zaslow's interference, and an award of preliminary and permanent injunctive relief prohibiting V. Zaslow from continuing to interfere with the contract which plaintiffs had with Shopify.

### COUNT XV

**J. Browne A. Coleman and D. Browne  v.  V.  Zaslow
Intentional Interference With A Prospective  Contractual Relations
Under Pennsylvania Common Law. § 766(B), Restatement
of Torts (Second) and the Declaratory Judgment Act , 28 USC § 2201**

104.    Plaintiffs, J. Browne, ASC and DRB incorporate by reference the allegations set forth in Paragraphs 1 to 103 of the Complaint as if fully set forth herein.

105.    Pursuant to the common law of Pennsylvania, **§ 766(B), Restatement of Torts(Second)** and the Declaratory Judgment Act, 28 USC § 2201, J. Browne, ASC and DRB pray that the court enter judgment declaring that:

A)    An actor intentionally interferes with a prospective contractual relation when he or she intentionally or improperly interferes with "another's prospective contractual relation whether by inducing a third person not to enter the relation or preventing the other party from acquiring or continuing the relation. Restatement of Torts (Second) § 766(B).

B)    V. Zaslow interfered with the prospective contractual relations  that existed between Shopify and J. Browne as the owner of the reevent.myshopify.com account in his capacity as the owner of the code and as the representative of himself, ASC and DRB who collaborated in the authorship of the website by: i) attempting to terminate the revent.myshopy.com account with Shopify without seeking the consent or permission of J. Browne, ASC or DRB even though she knew, or should have known, that under the terms of the Shopify Service Agreement a request for termination of the account  would cause Shopify to delete all data then existing on the account; and ii) by making, and continuing to make a claim of ownership to the account which she knew was false and spurious which has caused Shopify to deny plaintiffs access to their own account. V. Zaslow knows that her continued persistence in pursuing a false claim of ownership has caused substantial pecuniary loss to the plaintiffs because it has prevented them from completing or launching the website in which they have invested more than $160,000.

106.    Plaintiffs  pray that judgment be entered in their favor declaring that V. Zaslow intentionally interfered with plaintiffs' prospective  contractual relations with Shopify and awarding damages for the pecuniary harm resulting from her interference, including,

but limited to the loss of revenue arising from the delay in completing and launching the website caused by V. Zaslow's intentional and improper interference, and an award of preliminary and injunctive relief prohibiting V. Zaslow from further interference with plaintiffs prospective contractual relations with Shopify.

**COUNT XVI**

**J. Browne, ASC and DRB v. Shopify**
**Declaration That All or Some of the Damage Disclaimer Provisions**
**In The Shopify Terms Of Service Agreement Are Not Enforceable**
**Under Pennsylvania Common Law and**
**the Declaratory Judgment Act, 28 USC § 2201**

107.    Plaintiffs, J. Browne, ASC and DRB incorporate by reference the allegations set forth in Paragraphs 1 to 106 of the Complaint as if fully set forth herein.

108.    Section 5 of the Shopify Terms of Service Agreement, entitled "Limitation of Liability," provides as follows:

1.    You expressly understand and agree that Shopify shall not be liable for any direct, indirect, incidental, special, consequential or exemplary damages, including but not limited to, damages for loss of profits, goodwill, use, data or other intangible losses resulting from the use of or inability to use the service.

2.    In no event shall Shopify or our suppliers be liable for lost profits or any special, incidental or consequential damages arising out of or in connection with our site, our services or this agreement (however arising including negligence). You agree to indemnify and hold us and (as applicable) our parent, subsidiaries, affiliates, Shopify partners, officers, directors, agents, and employees, harmless from any claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of your breach of this Agreement or the documents it incorporates by reference, or your violation of any law or the rights of a third party.

3.    Your use of the Service is at your sole risk. The Service is provided on an "as is" and "as available" basis without any warranty or condition, express, implied or statutory.

4.      Shopify does not warrant that the Service will be uninterrupted, timely, secure, or error-free.

5.      Shopify does not warrant that the results that may be obtained from the use of the Service will be accurate or reliable.

6.      Shopify does not warrant that the quality of any products, services, information, or other material purchased or obtained by you through the Service will meet your expectations, or that any errors in the Service will be corrected.

109.      Plaintiffs reasonably anticipate that Shopify will raise the disclaimers contained in Section 5 of the STSA as affirmative defenses in this proceeding, and plaintiffs therefore seek a declaration that the disclaimers are, in whole or in part, unenforceable or inapplicable to the type of damages or relief sought in this proceeding.

110.      Pursuant to the common law of Pennsylvania, and the Declaratory Judgment Act, 28 USC § 2201, J. Browne, ASC and DRB pray that the court enter judgment declaring that the limitations contained in section 5 of the STSA are not enforceable for one or more of the following reasons; 1) they are against public policy: 2) as part of a contract of adhesion they fail to describe the type of damages that have been disclaimed with sufficient particularity and are too vague to warrant enforcement because it is unclear as to the type of damage which is disclaimed: 3) the limitations are not the product of arms length bargaining between parties of comparable sophistication, but instead have been unilaterally imposed by Shopify without bargaining or negotiation as part of a contract of adhesion; 4) consequential damages cannot be disclaimed where it is the defendant's negligence or wrongful conduct which caused the harm to occur in the first instance; 5) a disclaimer is not enforceable where it licenses a party to engage in willful, wanton, reckless and arbitrary conduct, and /or to commit gross negligence; 6) Shopify, though doing business in the Commonwealth of Pennsylvania as a foreign corporation failed to obtain a "certificate of

authority" to do business in Pennsylvania, and is therefore precluded from counter-suing by

way of affirmative defenses to enforce  these disclaimers under 15 Pa. C.S. § 4122; 7) any

award of costs, including attorneys fees, to which plaintiffs are otherwise entitled, do not

purport to be barred by any of the disclaimers, and 6) if other items claimed by Shopify to

be covered by the disclaimer are in fact not the type of damage covered by the disclaimer

and fall into a category of damage which is not covered by the disclaimer the limitations

may not be used to bar damage claims or other types of relief.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues raised in the Complaint that are

triable by Jury.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiffs respectfully pray that the court enter judgment:

A)      Adjudicating and declaring that Shopify and Zaslow individually and in
conjunction with each other violated J. Browne's rights under the federal
copyright law, 17 USC § 101, <u>et seq</u> by denying him access to the code he
authored which was held in trust by Shopify in its capacity as the internet host
for the code at reevent.myshopify.com, granting J. Browne  preliminary and
permanent injunctive relief prohibiting Shopify individually or in conjunction
with V. Zaslow from denying J. Browne access to his own intellectual
property, holding Shopify and V. Zaslow individually and jointly and severally
liable for compensatory, punitive and special damages under 17 U.S.C §
504(c) for the harm and losses incurred as a result of the unlawful denial of
access to his own intellectual property by Shopify and V. Zaslow, and an
award of the costs and attorneys fees against Shopify and V. Zaslow for
bringing this action which the court is authorized to award under 17 U.S.C §
505.

B)      Adjudicating and declaring that Shopify and Zaslow individually and in
conjunction with each other violated the rights of J. Browne, ASC and DRB
under the federal copyright law, 17 USC § 101, <u>et seq </u>by denying them
access to the code which Jonathan Browne authored and the website which
J. Browne , ASC and DRB collaboratively authored which was held in trust by
Shopify in its capacity as the internet host for the code and the website at
reevent.myshopify.com, granting them preliminary and permanent injunctive
relief prohibiting Shopify individually or in conjunction with V. Zaslow from

denying them access to their own intellectual property, holding Shopify and VZ individually and jointly and severally liable for compensatory, punitive and special damages under 17 U.S.C § 504(c) for the harm and losses incurred as a result of the unlawful denial of access to their own intellectual property by Shopify and VZ, and an award of the costs and attorneys fees against Shopify and VZ for bringing this action which the court is authorized to award under 17 U.S.C § 505.

C)      Adjudicating and declaring that Shopify breached the Shopify Terms of Service Agreement by refusing to allow Jonathan Browne to access his reevent.myshopify.com even though he authored the code which Shopify held in trust for J. Browne in its capacity as the internet for J. Browne's intellectual property and he opened the reevent.myshopify.com, which under section 2.1 of the Shopify Terms of Service conclusively established him as the owner of the account, awarding preliminary and permanent injunctive relief prohibiting Shopify from refusing to recognize J. Browne as the owner of the reevent.myshopify.com or denying J. Browne access to the code held in trust by Shopify, as well as awarding compensatory, and special damages for the harm and losses incurred as a result of the unlawful denial of access to his own intellectual property by Shopify, and an award of punitive damages and costs, including attorneys fees, for its bad faith, willful and reckless conduct which violated the covenant and good faith, that adheres to every commercial contract, in order to deter Shopify and others who are similarly situated from engaging in such conduct in the future

D)      Adjudicating and declaring that the Operating Agreement entered between V. Zaslow and ASC and DRB  is null and void and of no further force or effect because: 1) the condition precedent for making the agreement operative----the organization and registration of Reevent Enterprises LLC as a Pennsylvania limited liability company---was never fulfilled, and 2) the numerous breaches of the OA which have occurred and continue to occur without cure; that judgment be entered in their favor awarding preliminary and permanent injunctive relief prohibiting V. Zaslow  from denying ASC and DRB access to the website currently located at reevent.myshopify.com which ASC and DRB authored by making any claim of ownership to the code or the website, a declaration exonerating ASC and DRB  from any further obligation to honor or comply with terms of the OA, compensatory damages for the harm and losses incurred by plaintiffs as a result of V. Zalow's  breaches of the Operating Agreement, and punitive damages and costs, including the payment of attorneys fees, for V. Zaslow's breach of the covenant of good faith and fair dealing that adheres to every commercial contract due to her bad faith, willful and reckless conduct in order to deter her and others who are similarly situated from engaging in similar conduct in the future.

E)      Adjudicating and declaring that Shopify breached the covenant of good faith and fair dealing that adheres to every commercial contract by arbitrarily

and capriciously denying J. Browne access to his own intellectual property which Shopify held in trust in its capacity as the internet host for the code which J. Browne authored and that the court award punitive damages and costs, including the payment of attorneys fees, to J. Browne by virtue of Shopify's bad faith, wanton, willful and reckless disregard of J. Browne's rights in violation of the covenant of good faith and fair dealing in order to deter Shopify and others who are similarly situated from engaging in comparable conduct in the future.

F)      Adjudicating and declaring that V. Zaslow breached the covenant of good faith and fair dealing that applies to every commercial contract by virtue of her bad faith, wanton, willful and reckless disregard of ASC's and DRB's contractual rights and that ASC and DRB are entitled to an award of punitive damages and costs, including attorneys fees, in order to deter V. Zaslow and others who are similarly situated from engaging in comparable conduct in the future.

G)      Adjudicating and declaring that V. Zaslow is liable to Plaintiffs based on principles of equitable distribution and quantum meruit and awarding preliminary and permanent injunctive relief prohibiting V. Zaslow from denying ASC and DRB access to the website currently located at reevent.myshopify.com which ASC and DRB authored on the grounds that she is the owner of the code or the website, or making any claim that she possesses an ownership interest in the code or the website, a declaration exonerating DRB and ASC from any further obligation to honor or comply with the provisions of the OA, as well as compensatory damages for the harm and losses incurred by plaintiffs as a result of V. Zaslow's claim of ownership to Shopify.

H)      Adjudicating and declaring that V. Zaslow breached the fiduciary duties which she owed to ASC and DRB, exonerating ASC and DRB from any further obligation to comply with the Operating Agreement based on VZ's breach of her fiduciary duties, awarding preliminary and permanent injunctive relief prohibiting V. Zaslow from denying ASC and DRB access to the website currently located at reevent.myshopify.com which ASC and DRB authored on the grounds that she is the owner of the code or the website, or making any claim that she possesses an ownership interest in the code or the website, and an award of compensatory damages for the harm and losses incurred by plaintiffs as a result of the delay in completing and launching the website arising from V. Zaslow's breaches of fiduciary duty.

I)      Adjudicating and declaring that Shopify breached the fiduciary duties which it owed to J. Browne in its capacity as trustee for the code individually authored by J. Browne, and in his capacity as the representative of himself, ASC and DRB who jointly collaborated in the authorship of the website, and awarding preliminary and permanent injunctive relief prohibiting Shopify from

denying plaintiffs access to the code which Shopify holds in trust for J. Browne in his individual capacity which is currently located at reevent.myshopify.com, and to J. Browne as the representative of J. Browne, ASC and DRB, from having access to the website which Shopify holds in trust for them, awarding J. Browne, ASC and DRB damages for the losses plaintiffs have incurred as a result of the breaches of fiduciary duty by Shopify which has caused them to incur substantial harm as a result of their continued inability to complete and ultimately launch the website as long as they are denied access to it. Plaintiffs seek compensatory, punitive and special damages by virtue of the foregoing breaches of fiduciary duty.

 J)     Adjudicating and declaring that judgment be entered in their favor declaring that Shopify negligently rejected plaintiffs request for access to their own intellectual property which Shopify held in trust on behalf of plaintiffs in its capacity as the internet host for the code and website located at reevent.myshopify.com, which was the proximate cause of the financial injury plaintiffs incurred arising out of their exclusion from access to their website which prevented them from completing and launching the website, and that plaintiffs be awarded compensatory damages for the financial harm they incurred that was proximately caused by Shopify's arbitrary, capricious, unreasonable and negligent conduct, and that plaintiffs be awarded preliminary and permanent injunctive relief prohibiting Shopify from denying plaintiffs access to their own intellectual property which Shopify holds in trust for plaintiffs in its capacity as the internet host for the code and the  website.

K)     Adjudicating and declaring that  V. Zaslow negligently performed the professional duties which she owed to ASC and DRB as their partner and as a professional business woman, and that the court enter judgment  making an award of compensatory damages for the pecuniary harm  caused by V. Zalow's negligent conduct, including, but not limited to, the financial losses incurred by ASC and DRB as a result of the delays caused by V. Zaslow's negligent conduct which prevented them from completing or launching the website, and that plaintiffs be awarded preliminary and permanent injunctive relief prohibiting V. Zaslow from claiming ownership to the code or the website located at reevent.myshopify,com.

L)     Adjudicating and declaring that, *inter alia,* Shopify's conduct in denying plaintiffs access to their own intellectual property, which it held in trust for plaintiffs in its capacity as the internet host for the code and the website was wanton and willful conduct that was carried out with such reckless disregard of plaintiffs rights that it constituted gross negligence, and in addition to awarding plaintiffs compensatory damage in order to compensate them for the pecuniary harm they have suffered as a result of Shopify's wrongful conduct the court should also award punitive damages and costs, including an award of attorneys fees, in order to deter  Shopify and

others who are similarly situated from engaging in comparable conduct in the future.

M)      Adjudicating and declaring that, *inter alia*, V. Zaslow's conduct in making false claims of ownership to the reevent.myshopify.com account, which knew caused Shopify to deny access to the code and the website which Shopify held in trust for plaintiffs in its capacity as the internet host for plaintiffs intellectual property was wanton and willful and carried out with such reckless disregard of plaintiffs rights that it constituted gross negligence, and in addition to awarding plaintiffs compensatory damage in order to compensate them for the pecuniary harm they have suffered as a result of Shopify's wrongful conduct the court should also award punitive damages and costs, including an award of attorneys fees, in order to deter V. Zaslow and others who are similarly situated from engaging in comparable conduct in the future.

N.      Adjudicating and declaring that V. Zaslow intentionally interfered with plaintiffs' existing contractual relations with Shopify, and awarding damages for the pecuniary harm resulting from her interference, including, but limited to judgment awarding the loss of revenue arising from the delay in completing and launching the website caused by V. Zaslow's interference, and an award of preliminary and permanent injunctive relief prohibiting V. Zaslow from continuing to interfere with the contract which plaintiffs had with Shopify.

O)      Adjudicating and declaring that V. Zaslow intentionally interfered with plaintiffs prospective contractual relations with Shopify. and awarding damages for the pecuniary harm resulting from her interference, including, but limited to judgment awarding the loss of revenue arising from the delay in completing and launching the website caused by V. Zaslow's interference, and an award of preliminary and permanent injunctive relief prohibiting V. Zaslow from continuing to interfere with the contract which plaintiffs had with Shopify.

P)      Adudicating and declaring that the limitations contained in section 5 of the STSA are not enforceable for one or more of the following reasons; 1) they are against public policy: 2) as part of a contract of adhesion they fail to describe the type of damages that have been disclaimed with sufficient particularity and are too vague to warrant enforcement because it is unclear as to the type of damage which is disclaimed: 3) the limitations are not the product of arms length bargaining between parties of comparable sophistication but have been unilaterally imposed as part of a contract of adhesion by Shopify; 4) consequential damages cannot be disclaimed where it is the defendant's negligence, gross negligence or wrongful conduct which itself caused the harm to occur in the first instance; 5) a disclaimer is not enforceable where to do so grants one party a license to engage in willful, wanton, reckless and arbitrary conduct, and /or to commit gross negligence;6)

as a foreign corporation Shopify's failure to obtain a Certificate of Authority under 15 Pa. C.S.A. § 4121(a)  precludes it from suing to  enforce these clauses as affirmative defenses; 7) any award of costs, including attorneys fees, to which plaintiffs are otherwise entitled, do not purport to be barred by any of the disclaimers, and 8) if other items claimed by Shopify to be covered by the disclaimer are in fact not the type of damage covered by the disclaimer and fall into a category of damage or prospective relief  which is not covered by the disclaimer the limitations may not be used to bar such damage claims or relief.

                    Respectfully Submitted,

                    **LAW OFFICE OF**
                    **WILLIAM T. COLEMAN, III**


BY:   _/s/ William T. Coleman  III_____
                    WILLIAM T. COLEMAN, III, ESQUIRE
                    600 Conshohocken State Road
                    Penn Valley, PA.19072
                    Phone No.: (484) 270-8926
                    Attorney ID: 22457
                    Counsel for Plaintiffs,
                    Jonathan O.Browne,
                    Dolores R. Browne
                    and Allegra S. Coleman


DATE: August 11, 2014

**EXHIBITS TO COMPLAINT**

=

EXHIBIT "A"

# THE LAW OFFICE OF
# WILLIAM T. COLEMAN III

600 CONSHOHOCKEN STATE ROAD
PENN VALLEY PA 19072

WILLIAM T. COLEMAN III

Direct Dial: (484) 270-8926
Mobile: (267) 240-7852
E-Mail: williamtcolemaniii@gmail.com

July 9,2014

*Sent Via E-mail*

Ms. Moinca Gallant
Shopify
Support@Shopify,com

Re: *In Re ReEvent Enterprises  LLC*
reevent.myshopify.com.

Dear Ms. Gallant:

A dispute has arisen between Jonathan Browne ("Jon Browne" or "J. Browne,") Dolores Browne ("D. Browne" or "DB") and Allegra Saens Coleman ("Ms. Coleman" pr "ASC")(collectively referred to as the "Coleman/Browne team" or "CBT") on the one hand, and on the other hand, Ms. Valori Zaslow ("Ms. Zaslow" or "MVZ,") concerning the ownership rights to the code that is stored on Shopify who serves as the internet host for the account whose uniform resource locater ("url") is reevent.myshopify.com. In view of the dispute, Shopify has made the decision to deny the CBT and MVZ access to the account located at reevent.myshopify.com  until the dispute concerning ownership rights is resolved.

In my most recent email to you, I indicated that the parties planned to meet to see whether in the short term the parties could reach an agreement about the terms and conditions under which each could have access to the data stored on Shopify, and in the long term how they might reach an agreement as to how they could organize an LLC to create and manage an events related website. D. Browne and Ms. Coleman met with MVZ on Saturday June 21, 2014 in an attempt to work out the short and long term issues. Although MVZ had been conciliatory in person and telephone discussions prior to the meeting, at the meeting she assumed what we perceived to be an uncooperative, belligerent and confrontational posture. After the meeting, the CBT sent a written proposal to MVZ which addressed long and short term issues, and asked for a response by Wednesday June 25, 2014. More than two weeks have passed since the Saturday meeting and the CBT has received no communications from MVZ or any representative of MSV relative to the proposal that was made, and there

have been no discussions in regard to any other issue. This non-responsiveness has led to the ineluctable conclusion that MVZ has no interest in resolving the short term problem concerning ownership of the Shopify account, or curing the breaches of contract she has previously committed, and negotiating a new agreement that would allow for the formation of an LLC whose mission would be to create and then operate and maintain a website whose purpose would be to serve the events industry.

As a result of the inability of the CBT and MVZ to reach an agreement concerning ownership of the reevent.myshopify.com account, CBT perceives no alternative than having Shopify to make a determination as to who is the owner of the reevent.myshopify.com account. From the CBT perspective MZV's claim to ownership is as spurious as it is frivolous. The CBT has submitted Declarations prepared subject to penalties of perjury under 28 USC § 1728 of each member of the CBT, J. Browne (attached as Exhibit "A,"), D. Browne (attached as Exhibit "B,") and Ms. Coleman (attached as Exhibit "C,") which provide overwhelming admissible evidence that the CBT collectively, and John Browne in particular, are the true owners of the data base stored by Shopify on the reevent.myshopify.com account, that the functions for administering the account have been delegated to Ms. Browne, and that D. Browne and Ms. Coleman have created most of the content which Jon Browne translated to code and stored on Shopify as the internet host for the data base that constitutes the website placed on reevent.myshopify.com. Furthermore, these declarations demonstrate beyond cavil that MVZ's claim to ownership is frivolous and has been asserted for no purpose involving the development, use and implementation of the the website for which Shopify is serving as the internet custodian in order to achieve a legitimate or significant business objective, but is advanced solely for the purpose of blocking the CBT's data base which it has created with negligible input from MVZ.

The declarations together establish the following undisputable facts. Ms. Coleman and Ms. Zaslow met each other through their children. Because Ms. Zaslow owned event related retail stores known as ReEvent and Sophisticated Seconds, and Ms. Coleman had personally been involved in the "Event" business, they got into a discussion about an idea Ms. Zaslow was exploring concerning the creation of an event related website, which could be used to market, purchase, advertise, sell and/or rent goods or services used in connection with events. In this context, Ms. Coleman advised Ms. Zaslow that her brother was a computer engineer who had expertise in the development of websites. (Coleman Decl.; Exhibit "C,"¶s 3-4), These initial discussions ultimately led to a decision in which Ms. Coleman and her mother, Dolores Browne, decided to form a Pennsylvania LLC in which they would serve as the principals of a company whose purpose was be to create, maintain, and administer an events related website that marketed and sold event related goods and services.(Id. at ¶ 4). Ms. Browne was included because of her events experience, graphic design experience, and she had substantial computer software experience. (D. Browne Decl.. Exhibit "B", ¶ 1 ; See D. Browne  Resume, Ex "1.")

D. Browne, Ms. Coleman, and MVZ entered into the Operating Agreement of ReEvent Enterprises, LLC. ("REL" and "Operating Agreement" or "OA") (attached to the Browne Declaration as Exhibit "2,") which was entered into in order to establish a Pennsylvania LLC whose purpose would be to create, establish, maintain, and administer an events based website. Coleman and Browne were not represented by counsel at the time the OA was signed. The OA was prepared by MVZ's counsel. The key material terms of the agreement provided that: 1) Ms. Zaslow, Ms. D. Browne, and Ms. Coleman would be the principals of the corporation, with Ms. Zaslow owning 60% of the stock, and Coleman and Browne each owning 20% of the stock (OA ¶s 1, 2, 3 and 5); 2) the term of the agreement was "indefinite" (OA¶ 4); 3) the purpose of the LLC was "to establish and maintain a website whose primary purpose would be to provide advertising space and pages to showcase items for sale, rent and consignment for events (¶ 2); 4) REL would not receive income from advertising or sales made by ReEvent, LLC ("ReEvent") (a company owned and controlled by Zaslow), catering a party by ReEvent, providing personnel for a party staffed by ReEvent, consultation services provided by ReEvent, or consignments made by Sophisticated Seconds (another company owned by MVZ), or items sold by DesignReasons (a company owned by Browne and Coleman) (OA ¶ 2); 5) if the company was sold all three partners would have to agree to the terms for sale, but the proceeds would be divided 60% Zaslow, 20% Browne, and 20% Coleman (¶ 6(e) and (f); 6) The business was to be managed by the principals who are referred to as "Members" in the agreement (OA ¶8); 7) the site was to "be maintained and updated regularly by Browne and Coleman while Zaslow [was to be] in charge of sales (OA ¶10(c))); 8) the company was to open a bank account and procure a credit card in order to cover start up costs (OA ¶10[b]), and 9) a "MAC Pro Computer [was] to be given to Jonathan O'Neill Browne, for developing a company website."  (Coleman Decl.; Exhibit "C," at ¶ 5)

D. Browne and Ms. Coleman offered to do the paperwork necessary to organize and establish ReEvent Enterprises, LLC as a corporate entity, but Ms. Zaslow insisted on fulfilling this task on her own. When D. Browne and Ms. Coleman asked MVZ whether the company had been incorporated, she assured them that it had. However, when D. Browne and Ms. Coleman insisted on seeing the Articles of incorporation and other documentation establishing the existence of a new corporation MVZ admitted that she had failed to organize the corporation. Her justification for failing to organize the corporation was that the website had not yet been launched and th Under the Operating Agreement Zaslow was given 60% of the interest in the new company, ReEvent Enterprises LLC, because the initial concept was that MVZ's retail businesses, ReEvent, LLC and Sophisticated Seconds, would be part of the enterprise, and that since she started and owned these companies she deserved a larger percentage return. Moreover, the understanding was that 60% is what she would receive in the event the company was sold, but in the day-to- day operation of the company MVZ would be one of three equal partners, and no single principal would have authority over another. (Id. at ¶ 7).

As the Operating Agreement itself makes clear, it was the responsibility

of D. Browne and Ms. Coleman to create, develop and maintain the website (OA, ¶10[c]), and it was Ms. Zaslow's responsibility to market the website. D. Browne and Ms. Coleman recruited Jonathan Browne to serve as the software engineer for the project and to create the code for the site, while Ms. Coleman and D. Browne created the content for the site. (Id. at ¶ 8). Jonathan Browne is a software engineer with substantial experience in constructing websites.  He agreed to essentially donate his time for constructing the website because of the family tie between D. Browne, who was his mother and had provided him with financial assistance in starting his own business, and Ms. Coleman, who was his sister. J. Browne advised his mother and sister that it would be necessary to acquire a Mac Pro computer in order to construct the website, and asked that he be given the computer when the project was completed. Coleman, D. Browne, and MVZ agreed to this condition. However, at an hourly rate of $100 per hour the actual time it took him to create the code which he placed on Shopify who served as the internet custodian for the data base he created ranged somewhere between $25, 000 and $35,000. (Decl J. Browne, Exhibit "A", at ¶ s 1 to 4).

Jon Browne opened the Shopify account by going online and filling out the forms provided by Shopify for opening an account. He opened the account under the name of ReEvent Enterprises, LLC and the url reevent,myshopify,com because at the time he opened the account it was his understanding that ReEvent Enterprises, LLC was going to maintain and operate the website, and that the LLC either had or was going to be organized in the near future. (Decl J. Browne, Exhibit "A," at ¶ s 6-10). D. Browne and Ms. Coleman developed the content for the website, which they would send to Jon Browne, and he in turn would translate it into code and place it on Shopify. (Decl J. Browne, Exhibit "A," at ¶ 11).  At all times the code created by Jonathan Browne was his intellectual property and he retained a proprietary interest in the code at any and all times. Shopify served as the internet custodian for the code John Browne created.(Decl J. Browne, Exhibit "B", at ¶ 10). Mr. Browne delegated all administrative functions in regard to the Shopify account to Ms. D. Browne, who took over billing and all other administrative functions in regard to the account. (Decl J. Browne, Exhibit "B," at ¶ 10; D. Browne, Exhibit "B," at ¶ 5 ).   Mr. Browne had no contact whatsoever with MVZ in regard to the code or the data base. (Decl J. Browne, Exhibit "A", at ¶ 12).

Mrs. Coleman and D. Browne each spent a substantial number of hours working on the website between August  2013 and the present. Ms. Coleman worked approximately 450 hours on the website in this time frame, which at the rate of $65 per hour represents a value of $29,250.(Coleman Decl, Exhibit "C," ¶ 9) Ms. Coleman and D. Brown had an ongoing dialogue concerning logos, protocols, themes, carts, rental agreements, the privacy policy, coordination regarding construction of the website with Mr. Jonathan Browne, and the development of a mission statement for the website. In each of these areas Ms. Coleman focused on writing, research, and coordinating how information should be placed in and on the computer for use on the website. Ms. Browne focused on graphics and design. Ms. Coleman conducted research, wrote and placed the words and icons for the website, served as the primary "go-between" between

the Coleman/Browne team and Ms. Zaslow, the lead negotiator with Ms. Zaslow concerning all issues in which the differences between the parties (which sometimes were three way differences, or differences in which Ms. Coleman or D. Browne sided with Zaslow against one or the other,) scheduling and coordination meetings between the parties, conducting follow-through after the meetings, defining and clarifying roles and responsibilities as the project progressed, and negotiating agreement as to language used in all instances where agreement was required. Ms. Coleman and Ms. Browne completely reconfigured the logo for the web site because Ms. Zaslow refused to provide the graphics she had already had designed and were agreed upon by all three parties and were necessary for completing the "Home Page." They also provided all of the floating pictures for the "Home Page," "search site," "holidays", "venues," "special occasions," "event professionals," "search your location," "how it works," and "how do I rent", protocols. Ms. Zaslow initially came up with the idea for the "Props and Décor" protocol which all the parties are familiar with because they are displayed on many other web sites, but the Coleman/Browne team developed the idea for how these concepts couldbe used in the context of their particular website site. Ms. Zaslow initially suggested we use "themes" as a category, but Ms. Coleman and Ms. Browne expanded upon them. The Coleman/Browne team wrote the "Terms and Conditions" for the website with Ms. Zaslow's input. (Coleman Decl. ",¶s 10-12 ; D. Browne Decl ¶ 4). Ms. Browne worked 1500 hours between August 2013 and the present on the website at an hourly rate of $75 per hour creating a value of approximately $112,500. (D. Browne Decl ¶ 4). Accordingly, the total value of the investment, which the CBT has made in their collective investment in the website, is in the range of $166,000 to 175,000 (J. Browne $25,000 to $35,000; D. Browne $112,000; and Ms. Coleman $29,000.)

On the other hand, Ms. Zaslow's contribution to the creation of the website was negligible in comparison. First, the initial Operating Agreement made clear that it was Coleman and Browne's responsibility to create, develop, and maintain a website. Ms. Zaslow's contribution was to be in the area of marketing, an endeavor that would not begin in earnest until after the website was launched." (Coleman Decl.; Exhibit "C," at ¶ 5; OA ¶10(c)). Most of the time Ms. Zaslow spent on the website involved attending meetings at which she responded to progress reports made by D. Browne and Ms. Coleman. Ms. Coleman estimated that she spent no more than 30 hours working on the website. (Coleman Decl.; Exhibit "C", at ¶ 12). Furthermore, as stated above, the parties borrowed $4,044. to pay for a computer that was necessary to construct the website and make a partial payment to J. Browne for the services he provided as a computer engineer. Of this amount $2,919 has been re-paid by D. Browne and Ms. Coleman, while MVZ contributed $1125 to repaying this debt. In addition, the Coleman/Browne team as of June 1, 2014 will have paid $170 for various applications necessary to establish the website, and $500 for office supplies (estimate for paper, ink. postage, and miscellaneous office supplies) in preparing the website. In addition Coleman and Browne had agreed to pay ½ the costs of the Shopify account, but to date have paid $165, and Zaslow has paid

$100 for the Shopify account. Zaslow failed to make any payments for sustaining the Shopify account or repaying the debt to purchase the computer since May 1, 2014, all of which have been covered by the CB, (D. Browne Decl, Exhibit "C," at ¶ 5; Coleman Decl.; Exhibit "C," at ¶ 13.)

MVZ breached the Operating Agreement and violated her fiduciary duties to her partners by: 1) failing to make monthly payments necessary to extinguish the debt for purchasing the computer and software applications; 2) failing to establish the LLC on a timely basis; while representing this had been accomplished: 3) failing to fulfill her marketing obligations under the contract by failing to provide sufficient or timely information about Re-Event merchandise or services that needed to be included on the website by the date of its launch: 4) failing to provide both the information and input she was responsible for providing on a timely basis, thus unreasonably delaying the launch of the website by more than six months; 5) failing to prepare a marketing brochure for the products she wants to market on the web site, which was part of her overall failure to fulfill her marketing function for the website; and 6) reneging on her promise to provide Coleman and Browne respectively with a 20% interest in Re-Event; 7) failing to communicate with Browne and Coleman at all for more than 5 weeks concerning the preparation and launch of the website, thereby abandoning the contract she had entered with Coleman and Browne. (Coleman Decl.; Exhibit "C", at ¶ 14).

Because of these breaches and the fact Ms. Zaslow failed to incorporate REL and the ongoing conflict and distrust that had arisen between the CBT and MVZ the CBT rescinded the Operating Agreement, but made a counter-proposal set forth in an An Amended Operating Agreement Between the Principals of ReEvent Enterprises, LLC, a copy of which is attached to the Coleman Declaration as Exhibit "3." Coleman Decl.; Exhibit "C," at ¶ 15). Ms. Zaslow responded to the Counter-proposal by stating that she had to retain a new lawyer. After MZV's lawyer, Mr. Louis N. Marks, contacted CBT's lawyer, Mr. William T. Coleman III on behalf of Ms. Zaslow, Mr. Coleman wrote Mr. Marks a letter dated June 11, 2014, a copy of which is attached to the Coleman Declaration as Exhibit "4," in which the CBT lawyer explained how and why Ms. Zaslow had breached the Operating Agreement, and proposed a methodology for either resolving the differences between the parties so they could move forward with the formation of an LLC or arrive at an agreement that would enable them to permanently sever their relationship. (Coleman Decl., Exhibit "C", at ¶ 16).

After receiving the Counter-Proposal for an Amended Operating Agreement MVZ committed additional breaches of the original Operating Agreement by attempting to terminate the account for reevent.myshopify.com, which would make it impossible to continue to construct the website. See Email Correspondence re: Shopify Account, attached to Coleman Declaration as Exhibit "4." By email dated June 6, 2014, Monica Gallant, an attorney for Shopify, informed Ms. Browne that Ms. Zaslow had attempted to close the website. In order to protect the code developed by Jon Browne and the investment which the CBT had made in the development of the website, D. Browne, who at the time

was listed as the "owner " of the Shopify account, caused Ms. Zaslow to be denied access to the account. (Coleman Decl., Exhibit "C", at ¶ 17).

After denying MVZ access to the account, Mr. Marks wrote Mr. Coleman an email stating that it was "wrong" to deny Ms. Zaslow access to the account, to which Mr. Coleman responded by email dated June 18, 2014, in which he explained that the only reason MZV had been denied access to the account was because without the consent of J. Browne, D. Browne or Ms. Coleman, Zaslow had unilaterally attempted to terminate the account, which prevented the CBT from continuing to build the website, and jeopardized the entire investment which the CBT had collectively made in the website. See Email Correspondence re: Shopify Account (email dated June 18, 2014 from Coleman to Marks), attached to Coleman Declaration as Exhibit "5." (Coleman Decl., Exhibit "C", at ¶ 18).

 In the June 6, 2014 letter, Ms. Gallant identified four types of documents that would be necessary to establish ownership of the account:  scanned copy of business license; scanned copy of photo ID; last 4 digits of card on file; amount for last two bills. MZV evidently forwarded this documentation to Shopify, and on June 19, 2014 Ms. Browne received an email from Monica Gallant, which stated: "Thank you for the email. Unfortunately, we have received sufficient documentation to prove that Valori is the rightful owner of the account. reevent.myshopify.com. I have since proceeded to transfer the ownership over to her. Regards,Monica."  See Email Correspondence re: Shopify Account (email dated June 19,2014 from Coleman to Marks), attached to Coleman Declaration as Exhibit "5." (Coleman Decl., Exhibit "C," at ¶ 19).

Upon receipt of this email Mr. Coleman immediately wrote Ms. Gallant a letter advising her that Ms. Browne was going to forward the same documentation that had been requested in the initial email Ms. Browne had received from Ms. Gallant. The email also provided a more detailed explanation as to the basis for CBT'S claim for ownership to the account. See Email Correspondence re: Shopify Account (email dated June 19, 2014 from Coleman to Gallant). (Coleman Decl., Exhibit "C," at ¶ 20).

 By email dated June 19, 2014, a copy of which is attached as Exhibit "6," Ms.  Gallant advised Ms. Browne that Shopify had received our information that Ms. Gallant had identified in her June 6, 2014 email that established conflicting claims of ownership. Ms. Gallant advised Ms. Browne that in accordance with Shopify policies, it was denying access to the account to both parties until the conflicting claims were resolved. (Coleman Decl., Exhibit "C," at ¶ 21).

After receiving this information the CBT had some hope that differences with MVZ could be rectified, Ms. Zaslow's initial response to these events was that she wanted to do everything she could to resolve the situation and to work out an arrangement where the parties could go forward with the formation of a new company. She, among other things, agreed that the ownership interest in a new company would be divided evenly between all three partners. (Coleman Decl., Exhibit "C," at ¶ 22).

My mother and I met with Ms. Zaslow on Saturday June 21st, 2014. Despite the initial conciliatory approach taken by Ms. Zaslow, she reverted to her former confrontational and uncooperative style at the June 21st meeting. At the

conclusion of the meeting my mother and I submitted a written proposal to Zaslow and her attorneys as a blueprint for moving forward with the formation of a new company. My attorney sent a proposal after the meeting to which neither Ms. Zaslow nor her attorneys has responded. Inasmuch as the meeting was held 12 days ago, this constitutes further evidence that she has elected to abandon the project since neither she or anyone representing her has spoken to us in 12 days despite MVZ's promise to respond in 3 days.

      This brings us full circle. The parties are at an impasse which only Shopify can resolve. Ms. Browne has advised me that she has been informed by Shopify that under its policies there can only be "one" owner of an account. If this is the case, the record as established by the attached declarations of Jonathan Browne, D. Browne and Ms. Coleman makes abundantly clear that Jon Browne is the owner of the code for which Shopify is serving as the internet custodian for the reevent.myshopify.com account.  There can be no dispute that: 1) Jonathan Browne opened the reevent.myshopify.com; 2) Jonathan Browne created the code and data base which is currently stored on the Shopify account at reevent.myshopify.com; 3) Jonathan Browne delegated administration of the account to D. Browne; 4) Jonathan Browne created the code based on substantive information for the website provided to him by D. Browne and Ms. Coleman; 5) Jonathan Browne has a cognizable and protected proprietary interest in the code which Shopify is storing on the internet at the url reevent.myshopify.com; 6) the time and effort taken to design and create the code and substantive information currently stored by Shopify at reevent.myshopify.com that includes the contributions made by D. Browne and Ms. Coleman exceeds a value of $150,000; 7) the CBT seeks access to the data base which they created because they want to complete the website as soon as possible because they want to launch the website and begin to draw income from the website; 8) the CBT has fulfilled and continues to fulfill all of its financial obligation for preparing the website for launch; 9) every day MVZ's spurious claim of ownership remains pending delays the launch of the website causes damage and injury to the CBT.

      MVZ's claim to ownership is frivolous and specious because: 1) MVZ played no role whatsoever in developing or creating the code used for the website: 2) MVZ made a negligible financial or substantive contribution to the creation of the website, and has breached her obligations to pay for the debt incurred necessary to acquire the computer used to create the website and provide partial payment to Jonathan Browne for the services he has rendered to create the code and she has ceased paying for the Shopify account; 3) MVZ has abandoned the project by virtue of her failure to communicate about it or fulfill her contractual obligations: 4) the sole basis upon which she claims an "ownership" interest in the website is based on an operating agreement to establish a company that was never organized. If a choice must be made based on these facts it is apparent that the CBT claim to ownership, which means Jonathan Browne owns the code and has delegated the administration of the account to D. Browne, is far superior to the frivolous claim made by MVZ. MVZ's contract claim is based on a condition precedent that was never fulfilled---the organization of

ReEvent Enterprises LLC as a corporation. Since this condition was never fulfilled the entire contract is null and void. Moreover, there is nothing within the four corners of the Operating Agreement which addresses how assets created in anticipation of REL being organized when it is never organized should be divided. In view of the silence on this issue the assets should be divided on the basis of equitable distribution and quantum merit. Since the CBT created the bulk of the assets related to the creation of the website through direct financial contributions or by expending the time or using the skills necessary to create the assets they should be given the right to the ownership of the data base for the website which Shopify is currently storing as the custodian for Jonathan Browne.

The CBT is also open to a solution to this dispute that does not require Shopify to declare one party a "winner" and the other a "loser," but is a solution that would result In a "win-win" resolution for both parties. CBT's primary concern is that it not be denied access to the website. The denial of access to the data base it created prevents the CBT from completing and launching the website, which prevents it from realizing any of the income it anticipated from the more than $150,000 investment in time and funds it has thus far contributed to the creation of the website. CBT has no objection if MVZ continues to have access to what has thus far been created, as long as Jonathan Browne is given access to the existing data base located at reevent.mysjop[fy.so that he can extract the information that is currently on the reevent.myshopify.com account, and then open up an entirely new Shopify account into which CBT could deposit the data base that was previously stored at reevent.myshopify.com under a new and different url. MVS would continue to have access to the reevent.myshopify.com data base through that account, and the CBT could continue to construct and eventually launch the website in which it has already invested more than $150,000 under the a new account that bears a different url. This solution would enable MVZ to realize whatever relatively modest investment she has made in the creation of the website in terms of time and money because she will have full access to the data base that has been created and control over the reevent.myshopify.com url. MVZ would be at liberty to close the website without infringing upon the interests and rights of the CBT if this continues to be the path MVZ wishes to take, or she can take the data base which is currently stored in the reevent.myshopify.com and hire another software engineer to construct the website in a manner which is customized to her own requirements. This solution includes everyone and excludes no one. (Decl J. Browne, Exhibit "A", at ¶ s 16-19). (Coleman Decl., Exhibit "C", at ¶ s 26-27); (D. Browne Decl, Exhibit "C", at ¶ 7).

As evidenced by MVZ's recent effort to unilaterally close the reevent.myshopify.com account it would appear that MVZ's intent is not to complete development of a website, either jointly with CBT, on her own, or with another partner, but merely to prevent CBT from having access to the data base for which Shopify is serving as custodian for the data base created by Jonathan Browne and the entire CBT. A continuation of the status quo based on MVZ 's spurious claim of ownership allows her to realize this negative objective, and results in the ongoing infliction of economic damage upon the CBT because they

are unable to complete and launch the website. We believe we have shown that the CBT claim to "ownership" of the account is far superior to any claim that has been or could theoretically be  advanced by MVZ. More significantly, we have proposed a solution which results in the infliction of no damage or harm to MVZ, which at the same time eliminates the restraints that are currently being imposed on CBT based on MZV's feckless claim of ownership , and allows the CBT to realize its business objectives. Needless to say, because of the considerable investment CBT has made in the data base for which Shopify is currently serving as custodian, if a satisfactory reconciliation cannot be achieved through Shopify's internal procedures, we will have no alternative but to evaluate what other remedies may be available, including the initiation of a proceeding in a court or other tribunal of competent jurisdiction in which Shopify  may be a Respondent.

CBT is concerned that in the event Shopify elects to resolve this matter by giving the CBT access to the data base and allowing the CBT to extract the data base and place it into a new Shopify account under a different url, since MVS has already attempted to close the account without the consent of the CBT, Shopify should administer the process in a manner that does not allow MVZ or CBT to destroy, tamper with or alter the data base in any way prior to the time Jonathan Browne is given the opportunity to extract the data base from reevent.myshopify.com. In short, steps should be taken to assure that a "photograph" of the current data base is taken so there is no question as to what was in the data base  immediately prior to transfer.

Time is of the essence to CBT. First, if there is any additional information or documentation that would be helpful to Shopify in making its decision, please let us know and we will provide it to you as soon as possible.  As you see, we have emailed a copy of this letter to Mr. Marks, MVZ's attorney, and to Ms. Zaslow. Accordingly, the CBT suggests that MVZ be given until July 17, 2014 to provide Shopify with a written response to this letter with a copy sent to the undersigned. If no response, or a request for an extension has not been provided by the 11th[1], Shopify may consider this a default, and determine that ownership belongs to Jonathan Browne in conjunction with with CBT. If a response is provided CBT shall have three days to submit a reply, after which Shopify shall make a decision ASAP. Shopify, may of course set whatever schedule it believes is appropriate for the parties to present their respective positions on the issue. However, the key point is that Shopify should provide some definite procedure and schedule for bringing this matter to a final resolution.

On behalf of Mr. Browne and CBT I thank you in advance for your attention to this matter.

Sincerely,

/s/ William T. Coleman III

---

[1] If a request for extension is made, CBT reserves the right to object to it if it is unreasonable or unjustified.

William T. Coleman III

*Via Email*

cc. Louis N. Marks, Esquire
    lnmarks@zarwin.com

    Ms. Valori Zaslow
    valori@zeventgroup.com

EXHIBIT "A"

## DECLARATION OF JONATHAN O'NEAL BROWNE
## PURSUANT TO 28 USC 1728

Pursuant to 28 USC 1728 and subject to penalties of perjury, I, Jonathan O'Neal Browne, hereby declare that the following facts are true and correct:

1.        As reflected in my resume, which is attached hereto as Exhibit "1," I am a software engineer with more than 30 years of experience. Based on this experience, my hourly consulting rate is $100 per hour.

2.        My mother is Dolores Browne, who, with my sister, Allegra S. Coleman (*nee* "Browne,") were starting a business whose mission was to create and maintain a website that could be used by vendors, purchasers, promoters and customers to sell, advertise, promote , market, purchase or rent goods and services related to the event industry(e.g., parties, celebrations, weddings, bar-mitzvahs, corporate meetings and retreats, reunions, etc).

3.        They asked me to serve as the software engineer for the construction of the website. Because both were members of my immediate family, and my parents had previously provided me with generous assistance in starting my own business, I agreed to essentially donate my time and services in order to develop the software for the website and provide technical assistance in the development of the website.

4.       I advised my mother and my sister that I would need a new computer in order to construct the website. Since I was providing the services for free I asked that they give me the computer in recognition of the services I provided. They happily agreed to this request. However, the value of the computer represents only a small percentage of the value of the services I actually provided. Since this was a project I was performing out of love and loyalty to my family, I did not maintain contemporaneous time sheets. However, at a minimum at my hourly rate of $100 per hour the value of the code for the software I developed for the website comfortably exceeds $25,000 to $35,000.

5.       At the time I began working on the website I understood that my mother; Dolores Browne, and my sister, Allegra Coleman, intended to establish an LLC Corporation that would be known as Re-Event Enterprises, LLC ("REL"), which would own and maintain the website.

6.       At the time I was recruited to construct the website my mother and sister already owned and controlled another Pennsylvania company known as DesignReasons Corp.

7.       In order to construct the website I needed an internet host where I could place the data base for the software code I was developing in consultation with Dolores Browne and Allegra Coleman. I made the decision to select Shopify as the internet host for the new

software I was creating.

8.      At the time I began working on the website, even though REL had not yet been formed, I opened the account under the URL reevent.myshopify.com in anticipation of the fact that REL was going to be organized and the website I was constructing would be owned and maintained by REL.

9.      I opened the Shopify account by filling out and completing the forms provided by Shopify on its website. This information should be in the Shopify records.

10.      I placed the code for the software on Shopify to serve as the internet host for the software database. As the person who opened the account and created the code for the data base, I was the owner and at all times retained a proprietary interest in the code I created and placed on Shopify in the course of constructing the website.

11.      In order to develop the substantive content for the software, I consulted continuously with Dolores Browne and Allegra Coleman. I delegated the administrative and accounting relationship with Shopify to my mother, D. Browne, who thereafter performed all of the accounting and administrative functions relative to the creation of the website. While I was creator and owner of the code, D. Browne and my sister, Allegra Coleman, designed the website and created the substantive content for the website. They would send the design and

substantive content to me. I would translate it to code, and deliver the code to Shopify so that Shopify could store the code in its capacity as the custodian and internet host for the code.

12.     Throughout the construction of the website I never spoke with or had any dealings whatsoever with Ms. Valori Zaslow; to my knowledge she played no direct role in constructing the website. I have delegated none of the proprietary interest I have in the code which I developed to Ms. Zaslow, and I have no contractual relationship with her or any entity in which she has an actual or prospective interest.

13.     It has come to my attention that REL was never organized or incorporated because of irreconcilable conflicts and disputes between my mother (Dolores Browne,) my sister, (Allegra Coleman,) and Ms. Zaslow which will prevent the formation of REL.

14.     As a consequence of these conflicts, and conflicting claims of ownership to the website made by Ms. Browne and Ms. Coleman versus a claim that has been made by Ms. Zaslow it is my understanding that Shopify has denied access to the website to me, my mother and sister, and Ms. Zaslow.

15.     I believe the facts set forth in this Declaration make clear that Ms. Zaslow's claim to ownership of the data base which my mother, my sister and I have created is totally bogus.  As shown above, Ms. Zaslow did not open the account, she did not create or

contribute any of the code used to create the data base for which Shopify continues to serve as the custodian, and it is my understanding that this whole controversy began when she unilaterally attempted to close the account on which Shopify is serving as the custodian for the code which I personally created and developed without consulting with me or her putative partners, Ms. Browne and Ms. Coleman. I view this as nothing less than attempt to purloin my intellectual property and proprietary information.

16.     Ms. Zalow's unauthorized and unjustified conduct has prevented me and my mother and sister from having access to the data base which I developed that represents an investment made by me and my mother and sister that far exceeds $150,000 in value if the time and effort which my mother spent in developing the content for the website is taken into consideration, which has prevented us from continuing to build and improve the website so that it can be launched in the near future. See Declarations of D. Browne(Exhibit "B") and Allegra Coleman ("Exhibit "C")

17.     Ms. Zaslow has no interest in further development of the website, or the data base I have developed, because she sought to terminate the account with Shopify.

18.     For the foregoing reasons, I respectfully request that Shopify deny Ms. Zaslow's claim for ownership, and confirm my ownership of the data base for which Shopify is serving as the internet

custodian, for which I have delegated the administrative responsibilities for maintaining the account to Dolores Browne, by granting me, Ms. Browne, and Allegra Coleman exclusive access to the data base located at revent.myshopify.com, and excluding Ms. Zaslow from access to the data base because of her previously manifested attempt to foreclose me and my mother and sister from having access to the data base.

19.     Even if Shopify should elect not to deny Ms. Zalow's claim of ownership, it should not deny me access to the code and data base that I have created for which Shopify is serving as the internet custodian. Accordingly, if I am given access to the Shopify website solely for the purpose of recovering the code and data base which is located at reevent.myshopify.com, once I have recovered the code and data base, I will open a new account with Shopify under a different URL and place the code and data base in a new account. Ms. Zaslow may continue to have access to the data base as it existed as of the date I recovered the code from reevent.myshopify.com. This would enable me and my mother to work on and continue to develop the website as we see fit under a new URL to which Ms. Zaslow would not have access, and Ms. Zaslow would be at liberty to maintain or close the reevent.myshopify.com. website as she saw fit. Under any circumstances, Ms. Zaslow's spurious claim of ownership should not be permitted to deny me and my mother and sister access to the data

base in which we have made a substantial investment, and would be
costly and time consuming to recreate.




*/s/ Jonathan O'Neal Browne*

Jonathan O'Neal Browne

This  9th day of July 2014

**EXHIBIT "1"**

**JONATHAN BROWNE RESUME**

**SUMMARY**

I am a game industry veteran that has been developing software for over 20 years. In that time I have shipped over 50 game titles. In my role as founder/CEO of the independent game developer, Gorilla, I have managed as little as 1 team with 5 developers, to 5 teams simultaneously with 70 developers internationally.

My core skill set is programming. This gives me a clear understanding of the complete workflow involved to take a product from inception to deployment. I am a serial innovator, combining technology and design to create new interactive experiences. I am skilled in C++, Javascript/HTML5, AS3 and Objective C and have delivered projects for PC/Mac. GBA, DS, Wii, Facebook, Web and IOS. I also has also has experience with interactive toys and interactive TV.

EXPERIENCE

Gorilla Systems Corporation

Tampa, FL

President, Executive Producer, Game Developer

    1989-Present

Gorilla is an independent game developer that has shipped over 50 game titles for major publishers such as Disney, Mattel, THQ and Majesco. Specializing in games targeted at to Kids and Girls, Gorilla has delivered major hits like the Barbie® Digital Camera and Hannah Montana Music Jam.

- Managed the day to day business operations including business development.
- Conceived new game concepts, built prototypes and pitch presentations to acquire funding.
- Supervised and supported multiple development teams both collocated and virtual.
- Responsible for managing publisher relationships including negotiating contracts, changes in scope or design direction.
- Handled escalated HR issues.

- Developed core technology used in the games as well as general game programming.
- Responsible for hiring and terminating employees.

## Title History

| Title | Platform | Publisher |
|---|---|---|
| Dreamhouse Designer | Facebook | Digital Playspace |
| Deadline Hollywood Game | IOS | Paramount Digital |
| Design Reasons | Web/Ecommerce | Design Reasons |
| GoBible Read it Hear it apps: The Message, The Message Remix, NLT, NASB,KJV, NLT | IOS | GoBible |
| Boompad Custom | IOS | Braincloud |
| All Star Cheer | Wii | THQ |

| | | |
|---|---|---|
| Squad 2 | | |
| All Star Cheer Squad | Wii | THQ |
| All Star Cheer Squad | DS | THQ |
| Cake Mania | Wii | Majesco |
| The Clique | DS | Warner Bros. Interactive |
| Hannah Montana Music Jam | DS | Disney |
| The Little Mermaid | DS | Disney |
| The Little Mermaid | GBA | Disney |
| The Proud Family | GBA | Disney |
| The Cheetah Girls | GBA | Disney |
| Spy Kids:Mega Mission Zone | PC | Disney |
| Disney | PC /Mac | Disney |

| | | |
|---|---|---|
| Girlfriends | | |
| Lilo & Stitch Hawaiian Adventure | PC/Mac | Disney |
| You Can Fly With Tinker Bell | PC | Disney |
| Monsters Inc, Scream Team Training | PC/Mac | Disney |
| The Fairly Odd Parents Breakin Da' Rules | PC | THQ |
| Strawberry Shortcake Ice Cream Island Riding Camp | GBA | Game Factory |
| Strawberry Shortcake Strawberryland Games | DS | Game Factory |
| Strawberry Shortcake Sweat Dreams | GBA | Majesco |

| | | |
|---|---|---|
| Strawberry Shortcake Summertime Adventure | GBA | Majesco |
| Nancy Drew The Deadly Secret of Olde World Park | DS | Majesco |
| Nancy Drew The Mystery of the Clue Benders Society | DS | Majesco |
| The Barbie Diaries: High School Mystery | GBA | Mattel |
| Barbie as Sleeping Beauty | PC | Mattel |
| Working Woman Barbie | PC/Doll | Mattel |
| Nick Click Digital Camera | Interactive Toy | Mattel |
| Barbie Photo Designer and | Interactive Toy | Mattel |

| Digital Camera | | |
|---|---|---|
| Barbie iDesign Ultimate Stylist | Interactive Toy | Mattel |
| Hot Wheels Mouse | Interactive Toy | Mattel |
| Talk With Me Barbie | Interactive Toy | Mattel |
| My Interactive Pooh | Interactive Toy | Mattel |
| Barbie Magic Genie Bottle | Interactive Toy | Mattel |
| Barbie Ocean Discovery | PC | Mattel |
| Barbie Sticker Designer | PC | Mattel |
| Detective Barbie | PC | Mattel |
| Detective Barbie 2: The Vacation Mystery | PC | Mattel |
| FlipOut! | Atari Jaguar | Atari |
| FlipOut! | PC | GameTek |

The London Victory Club

    Tampa, FL

General Manager/ Software Developer

    1983 -1986


Technical Skills


Languages:  C/C++, Objective C, JavaScript, AS3.

Tools: Xcode, Visual Studio, Flash Builder

Platforms:  IOS, Web/HTML5, Mac OS, Windows/DirectX, UNIX,

Nintendo Wii/DS/GBA


EDUCATION


Temple University

Philadelphia, PA

Computer Science                                        1982-1983


Widener University

Chester, PA

Business/Accounting                                    1981-1982

**EXHIBIT "B"**

**1**

## DECLARATION OF DOLORES BROWNE
## PURSUANT TO 28 USC 1728

Pursuant to 28 USC 1728 and subject to penalties of perjury, I, Dolores Browne, hereby declare that the following facts are true and correct:

1.      As reflected in my resume, which is attached hereto as Exhibit "1," I am a Business woman, Architect, Artist, and Designer with a Bachelor in Architecture from Drexel University. I am a President of Designreasons.com.  From 2000 to 2008 I owned an events space known as TPDS Club which sponsored over 200 events per year, and from 2011 to the present I have been the  co-owner of DesignReasons Corp, a company that owns and operates a  website for a consulting design firm with the uniform resource locater("url") designreasons.com.

2.   I met Valori Zaslow through my daughter, Allegra S. Coleman, and as

**2**

explained in the Declaration of Allegra S. Coleman ("Coleman Declaration,") my daughter and I entered into a contract with Ms. Zaslow entitled "Operating Agreement of ReEvent Enterprises, LLC." ("Operating Agreement" or "OA") (attached hereto as Exhibit "2")

3.    I have reviewed the Declarations of Jonathan Browne and Allegra Coleman and I concur and affirm all of the factual information contained in those declarations, and incorporate them by reference in this declaration as if fully set forth herein.

4.    Between September and June I spent approximately 1500 hours working on the development of the website.  My activities focused upon the development of the graphics and design for the website. I worked collaboratively with my daughter, Allegra Coleman, concerning the creation of the logos, protocols, themes, carts, rental

**3**

agreements, privacy policy, and  mission statement for the website. In each of these areas Allegra focused on writing, research, and coordinating how information should be placed in and on the computer for use on the website. Allegra and I communicated with Jonathan Browne, who translated the information we provided him to code that he placed on Shopify, who served as the internet custodian for the data base.  The value of the services I rendered to the creation of the website whose data base was stored on the Shopify website during this time period  was $112,500 (1500 x $75 per hour).

      5.     I administered the Shopify account, which included payment of the bills for the account. Each month Allegra and I paid one half of the 59.69 charge for the account, and Ms. Zaslow paid the other half. Allegra and I have continued to make our respective contributions toward payment of the account, but Ms. Zaslow has not paid her share for June or July. Accordingly, Allegra and I have paid for Ms. Zaslow's share

**4**

since June  1, 2014 in order to maintain the account and keep it open.  For this reason alone she has abandoned any ownership interest she may have once theoretically possessed in the data base for the website.

      6.     Ms. Zaslow, my daughter and I met on Saturday, June 21, 2014 in an attempt to work out our differences in a way that would enable all three of us to go forward with the formation of a new company as equal partners to construct, administer and maintain a website. After the meeting our lawyer, on our behalf, submitted a written proposal which she agreed to respond to by Wednesday, June 25, 2014.  Neither she or her lawyer has responded to the proposal, nor has she or any representative for her attempted to communicate with us in any way since June 25, 2014, thereby confirming she has no interest in working out a solution to the Shopify account ownership issue or in reaching an agreement concerning the formation of an LLC.

**5**

7.      I agree with my son Jonathan Browne, and my daughter Allegra Coleman,
that this dispute should be resolved by having Shopify declare that Jonathan Browne is
the owner of the code for the website and that I am the administrator for the website,
and that Zaslow should be denied access to the website. As an alternative, Shopify
should give Jonathan Browne access to the website so he can recover the code for the
website and use it to open a new account with Shopify under a different url. Shopify
must take steps to protect the code as it currently exists and prevent Ms. Zaslow from
distorting, tampering with  or destroying the code as it currently exists  before Mr.
Browne gains access to it.


                          */s/ Dolores Browne*

                          **Dolores Browne**

                                  **6**

**This 9th day of July, 2014**

7

`

**EXHIBIT "1"**

**8**

**DOLORES BROWNE RESUME**
**CO-PRESIDENT OF DESIGNREASONS.COM**
**ARCHITECT, ARTIST, & DESIGNER**

**EDUCATION:**


MOORE COLLEGE OF ART

UNIVERSITY OF THE ARTS, DEGREE INTERIOR DESIGN

BARNES FOUNDATION, ART HISTORY, TWO YEARS

BARNES FOUNDATION, HISTORY AND ID OF PLANTS, THREE YEARS

TYLER-TEMPLE UNIVERSITY EXTENDED ART CLASSES

SANTA MONICA COLLEGE, COMPUTERS

**9**

DREXEL UNIVERSITY. BACHELOR OF ARCHITECTURE DEGREE

**PROFESSSIONAL**

TEACHER:

SPACE PLANNING, ART INSTITUTE  OF PHILADELPHIA

COMPUTER SOFTWARE:

AUTO CAD 12 ARCHITECTURAL SOFTWARE;  COREL DRAW & COREL

DRAW VIDEO STUDIO, ADOBE PRO, EXCEL, MICROSOFT WORD: WEB

**10**

SOFTWARE; SHOPIFY: E-COMMERECE, BOLD, OPTIONS

**PROFESSIONAL ASSOCIATIONS:**

CORPORATE MEMBER OF THE INTERIOR DESIGN COUNCIL

BOARD OF DIRECTORS OF THE PHILADELPHIA COLLEGE OF ART

BOARD OF DIRECTORS OF THE "Y" ARTS COUNCIL

PR BOARD OF THE INTERIOR DESIGN COUNCIL

URBAN DESIGN COMMITTEE. AIA

MERION CIVIC ASSOCIATION DIRECTOR

LOWER MERION PLANNING COMMISSION COMMITTEE WATER AND

11

ENERGY CONSERVATION


**BUSINESSES**

DESIGNREASONS.COM-CO-PRESIDENT: WEBSITE FOR INTERIOR DESIGN
FIRM USED TO SELL HIGH END FURNITURE, ART AND ACCESSORIES


TPDS CLUB, PRESIDENT:EVENT SPACE THAT SERVICED 200 EVENTS
PER YEAR IN CENTER CITY PHILADELPHIA THAT INCLUDED  PARTIES
SPONSORED BY INDIVIDUALS, PROMOTERS,UNIVERSITIES, COMPANIES,
LAW FIRMS AND HOSPITALS , AS WELL AS WEDDINGS, CORPORATE
MEETINGS, AND BAR-MITVAHS.

**SHOWS W/ EXHIBITIONS**


THEFLAMING GIRAFFE

**12**

DESIGNERS' SHOW HOUSE "ELLERSLIE" , BULLETIN
DESIGNER'S SHOW HOUSE "WOODSTOCK" , TODAY'S POST
DESIGNER'S SHOW HOUSE "FARAWAY FARMS", SPHERE
MAGAZINE/PHILADELPHIA INQUIRER.
WOMEN IN ARCHITECTURE SHOW/PHILADELPHIA AND WASHINGTON
PHILADELPHIA COLLEGE OF ART **ALUMNI SHOWS, WELCOMAT**


**PROJECTS:**


**TOGETHER WITH ALLEGRA COLEMAN COLLABORATED TO FORM AN**
**INNOVATIVE FURNITURE, ACCESSORIES AND ART WEB**
**SITE  HIGHLIGHTING FAMOUS ARTISTS AND**
**ARCHITECTS.**
**RESTORATION BAUHAUS - 343 WYNNEWOOD AVE., MERION STATION,**
**PA. 2011**
**COTTAGE ON THE SUSQUEHANNA RIVER IN**
**YORK,PA.**
**IN-HOUSE ARCHITECT, GRAPHICS, DESIGN -**
**DESIGNREASONS.COM**

**13**

EXPANSION OF SMG, CPA ACCOUNTANT FIRM, WYNCOTE, PA
GSC, SOFTWARE DESIGNERS, TAMPA FLORIDA
L.V.C.T. CORP., TAMPA, FLORIDA & REDONDO BEACH, CALIFORNIA
W,W,ONE. INC., PHILADELPHIA, PA
VINTAGE PROPERTIES, DIRECTOR OF DESIGN
THE BAUHAUS DESIGNED BY HOWE ON RT23, GLADWYNE, PA
ELLIOTT CURSON ADVERTISING AGENCY
HARRIET & STEWART GOLEN  ON SAMSON STREET IN PHILADELPHIA, PA
HOWARD N. SOBEL, LEGAL OFFICES, VOORHEES, NJ
HANCOCK PAPER CO, NORTHERN LIBERTIES, PHILADELPHIA, PA
JOYCE SEGAL. RITTENHOUSE SQ.
SHEILA GOODIS & CLAYTON SHORE. BALA CYNWYD, PA. PHILADELPHIA
INQUIRER
RUTH & DR. HARLEY, BALA CYNWYD, PA
SELTZER, RITTENHOUSE SQ.
MR. & MRS. MAX BUTEN, PENN VALLEY, PA
OSCAR SCHWARTZ, ESQ. PHILADELPHIA CENTER CITY HOUSE TOUR.
PHILADELPHIA INQUIRER
LASTER, SAMENS & LEVIN INSURANCE, LAFAYETTE BUILDING, OLD CITY
MARTIN FISCHER REAL ESTATE. LOFTS IN OLD CITY.
DR. STUART POLLACK, NE PHILADELPHIA, PA

14

GAY.BROWNE . PYRAMID BUILDING, OCEAN CITY,MD.
DR. ISRAEL DOMSKY DENTAL OFFICES
SOCIETY HILL REAL ESTATE, PHILADELPHIA,PA
SOMERSET KNITTING MILLS, PHILADELPHIA, PA. PHILADELPHIAINQUIRER
DR.&MRS. JAY YANOFF, GERMANTOWN
SECOND FEDERAL SAVINGS&LOAN. PA
BUCCI SHOW SALON. PHILADELPHIA INQUIRER. FOOT WEARNEWS
RAPUNZELS TOWER. CC (FIRST BOUTIQUEDESIGNED UNDERGROUND
WITH PLUMBING PIPES)
GENERAL HOUSING SYSTEMS INC.PA, NJ&CAYMAN ISLANDs
MR.&MRS. NEIL COHEN,LAFAYETTE HILLS, PA
ED BUZAN INC. (MODULAR TABLE " INFINITY"     BULLETIN, PHILADELPHIA
INQUIRER, INTERIORS,  INTERIOR  DESIGN MAGAZINE.
CONNER RESIDENCE FOR BECKER WINSTON ARCHITECTS '97
CAD CONTRACT WITH FREDERICK HARRIS ON THE I95 EXTENTION TO
THE AIRPORT ''99
GORILLA SYSTEMS CORPORATION HEADQUARTERS '99
ELLIOTT CURSON ADVERTISING AGENCY RITTENHOUSE SQ. '.2003
MAP OF SAN MIGUEL '2000
THE SIGNATURE TABLE

**15**

MAP OF MERION STATION '2013
BECKY & ZACH GOLEN CITY VIEW CONDO 2014
4001 MAIN STREET PROPOSAL 2013
VENTURI BUILDING PROPSAL 2013
921 MONTGOMERY AVENUE 2013

**GRAPHIC DESIGN**

DESIGNREASONS.COM - IN-HOUSE GRAPHIC DESIGNER
SGK, CPA ACCOUNTANTS
KARL'S BABY FURNITURE
A NEW TWIST - DECORATIVE BOXES FOR CANDY
UNITED STATES ENVIRONMENTAL ASSESSMENT AGENCY
STOCK EXCHANGE, LA, CA
LVCT, INC
MERION STATION ADVERTISING PIN AND POSTER '2012


**RESTORATIONS**


**16**

ARCHITECTURAL DRAWINGS, RESTORATIONS AND CONTRACTING
RESTORATION OF A 1948 INTERNATIONAL HOUSE SURROUNDED BY AN
MAGNIFICENT GARDEN 2009
PHILADELPHIA INQUIRER SUNDAY, FEBRUARY 12,
2012
CREATIVE RESTORATION OF A SHACK ON THE SUSQUEHANNA RIVER IN
YORK, PA '2004 LONDON RESTAURANT 19TH CENTURY (BATTLES
FLOWER SHOP) RESTAURANT DESIGN MAGAZINE ( JOE SPEAKEASY
SITE FOR, "BIG BLONDE," TV MOVIE)
4251REGENT SQ, PHILADELPHIA, PA. LATE 19TH CENTURY TOWNHOUSE
LONDON RESTAURANT **BAR 19TH CENTURY , MUSEUM AREA,**
PHILADELPHIA, PHILADELPHIA MAGAZINE (FEATURE ARTICLE)
METROPOLITAN MAGAZINE RITTENHOUSE SQ. BROWNSTONE 19TH
CENTURY, PHILADELPHIA INQUIRER
VICTORY BLDG., 1873 EMPIRE CAST IRON & MARBLE BLDG. 10TH &
CHESTNUT STREETS, LONDON VICTORY CLUB, PHILADELPHIA,
PHILADELPHIA INQUIRER, WELCOMAT, BULLETIN, AM PHILADELPHIA TV,
SITE FOR BIG BLONDE STARRING SALLY KELLERMAN AND JOHN
LEITHGOW.
BAUHAUS STYLE HOUSE BY WM. LESCAZE ( PSFS) GLADWYN, PA.
PROGRESSIVE ARCHITECTURE THE 1894 WYNCOTE SCHOOLHOUSE ,

**17**

ACCOUNTING FIRM .WYNCOTE, PA, PHILADELPHIA, INQUIRER
RITTENHOUSE SQ. APARTMENT EARLY 20TH CENTURY, PHILADELPHIA
INQUIRER
OLD FACTORIES INTO APARTMENTS.4TH & VINE STREET P
PROJECT FOR THE CONVERSION OF THE EASTERN STATE
PENITENTIARY '75
H.H. BATTLES BUILDING '98-2008 - THIS IS A 10 YEAR RESTORATION AND
THE MOST CREATIVE RESTORATION OF TITANTIC ARCHITECTURE THAT
WAS DESTROYED BY THE NEW OWNERS OF THE BUILDING. ONLY THE
PHOTOGRAPHS REMAIN.
CREATOR OF THE TPDS CLUB '2000


**TPDS STEEL FURNITURE AND STEEL PROJECTS:**

TWO LOCKING STAINLESS STEEL DOORS '2000
STAINLESS STEEL RAILINGS **'2000**
FREE FORM MIRROR DESIGNED BY DOLORES BROWNE & ROBERT
PHILLIPS '2001
SNAKE & TWIG MIRROR DESIGNED BY DOLORES BROWNE & ROBERT
PHILLIPS '2001

**18**

STEP UP SNAKE DANCE TABLE BY DOLORES BROWNE & ROBERT PHILLIPS '2004
INSECT LIBRARY BY DOLORES BROWNE & ROBERT PHILLIPS '2008
DESIGNER OF MANY SNAKE STAINLESS STEEL TABLE FURNITURE AND STEEL OBJECTS '2010
TRIGEN CALLA LILY STEAM PIPE COVERS - SCULPTURES COVERING TRIGEN'S STEAM PIPES - 1990'S


**AWARDS:**

BEST OF PHILADELPHIA FOR THE TRIGEN STEAM PIPE COVERS '95
TOP PRIZE .DREXEL ARCHITECT CLASS CONTEST '96
FINALIST .THESIS PROJECT. DREXEL UNIVERSITY '99
HONORARY MENTION FOR THE TOP OF THE HILL PLAZA CONTEST '2000
SPARK AWARDS FINALIST-STEEL BOOK REPOSITORY
PHILLY PUBLIC ART


Award winning Dolores Browne is a versatile artist/architect whose expertise revolves around building restorations, designing steel furniture and functional

**19**

sculptures, noted for her space planning, and has had her work exhibited throughout the US.  She began her career exhibiting in show houses in the Main Line, right outside of Philadelphia.  Now she has returned to the Main Line, where she operates her web site.  Delving into a variety of software programs, she introduces graphic design into her space planning and basically everything she does.   Being a computer advocate prior to the internet craze, she attended the AIA computer committee.  She also  attended the Barnes Foundation both for Art and Arboretum studies.  She is the first to join the Barnes Alumni Association and was on the University of the Arts Alumni Board. Her many restorations were published in various magazines and is best know for her Trigen Project, The Trigen Steam Pipe Covers won her the award for the Best Art in Philadelphia in 1995. Her last restorations are the Accomac Shores project in York, PA and the 1948 Bauhaus Renovations in Merion Station in 2010.  Her newest project is designreasons.com.

20

**EXHIBIT "2"**

**22**

Acct # 8627249623
031000053

# OPERATING AGREEMENT

# OF

# ReEVENT ENTERPRISES, LLC

# A PENNSYLVANIA LIABILITY COMPANY

LIMITED LIABILITY COMPANY OPERATING AGREEMENT OF
ReEVENT ENTERPRISES, LLC

1

This operating agreement is made between Dolores Rita Browne, Valori L. Zaslow, and Allegra Saens Coleman. Here in after each being referred to as ("Browne, Zaslow and Coleman"). Being the original sole members of  ReEvent Enterprises, LLC, a Pennsylvania  Limited Liability Company, herein referred to as ("Company").

In consideration of the mutual covenants, promises, and agreement set forth, and with intent to be legally bound, the parties agree as follows:

1. FORMATION
In accordance with the limited liability Act, 15 Pa.C.S. Sec. 8901 et.seq., as amended from time to time ("Act"), Browne, Zaslow, and Coleman organize a Limited Liability Company for the purposes herein expressed.

2. PURPOSES
The purposes and nature of the business, to be conducted and promoted, is to establish and maintain a website whose primary purpose will be to provide advertising space and pages to showcase items for sale, rent and consignment for events.
a. Company will create a website called "ReEvent".
b. Company is being created for the purposes of building a website that will enable clients, event professionals, and the general public to advertise their items for rent, sale, or consignment.
c. Income will be derived from advertisements, rental and consignment fees.
d. Purchases for ReEvent, LLC that the company will not receive income include, but are not limited to:
   1. Stationary designed by Invitation Alley.
   2. Catering a party by ReEvent.
   3. Consulting a party by ReEvent.
   4.  Personnel for a party staffed by ReEvent.
   5. Items consigned through Sophisticated Secondz.
   6. Items purchased from DesignReasons.
e. Browne, Zaslow and Coleman may agree to enter other business related activities, in which LLCs may be formed under the Act.

3. MEMBERS
The names and addresses of the initial Members are as follows:

Dolores Rita Browne
343 East Wynnewood Road
Merion Station, Pennsylvania  19066

Valori L. Zaslow
1100 Greentree Lane
Penn Valley, Pennsylvania  19072

Allegra Saens Coleman
600 Conshohocken State Road
Penn Valley, Pennsylvania  19072

2

**4. TERM**
The term and existence of the Company shall continue indefinitely.

**5. OWNERSHIP INTERESTS**
The interest of each of the initial members shall be as follows:

| | |
|---|---|
| Dolores Rita Browne | 20% |
| Valori L. Zaslow | 60% |
| Allegra Saens Coleman | 20% |

**6. DEATH OF A MEMBER**
If any party should perish or cease the ability to operate her responsibilities or if any member should desire to sell her shares in the Company, the following stipulations shall be adhered to:

    a. Coleman will be given Browne's 20% of the Company if Browne should perish or cease the ability to maintain her responsibilities.

    b. Browne will be given Coleman's 20% of the Company, and place 10% in a fund for her children if Coleman should perish or cease the ability to maintain her responsibilities.

    c. Zaslow will take responsibility for Coleman's and Browne's 40% of the Company, placing 20% in a fund for Coleman's children, if both Coleman and Browne should perish or cease the ability to maintain their responsibilities.

    d. Zaslow's 60% shares will be divided allotting 10% to both Coleman and Browne and 40% of the Company shares will be invested in a fund for her son, if Zaslow should perish or cease the ability to operate her responsibilities.

    e. If an offer is made to purchase the Company or a portion of the Company, the offer must unanimously be agreed upon by Browne, Zaslow and Coleman;  Browne, Zaslow and Coleman shall receive the amount equitable to  their portion of Company.

    f. No member will be allowed to give or sell their share(s) of the Company without approval of the other Members.

**7. SALE OF COMPANY OR INTERESTS**

    a. If an offer is made to purchase the company or a portion of it, the offer must unanimously be agreed upon by Browne, Zaslow and Coleman, each of them shall receive the proceeds accordance with their interests as stated in paragraph 5.

    b. No member may give or sell their shares in the Company without first offering such ishares pro rata or in full to the other members.  If such offer is rejected by the members, such offer may be made to the Company and if refused by the Company, such offer  may then be made to a third party.  The price to be paid for the purchase of such interest will be determined by the Company's Accountant via standard evaluation procedures of Accountants.

3

**8. MANAGEMENT**

    a. The business and affairs shall be managed by the Members. Only the Members and authorized Agents of the Company, shall have the authority to bind the Company. The Members, on behalf of the Company, shall have the power to do any and all acts necessary or convenient to, or for the furtherance of, the business and the affairs of the Company.

    b. The Members may appoint, by written resolution of the members. Officers and Agents to whom the Members may delegate, in writing, whatever, duties, responsibilities, and authority the Members desire to delegate.  Any officer or agent may be removed for cause by the managing members at anytime by written notice to the said officer or agent to the members may appoint a sole managing Member if they deem such necessary.

**9. MEETINGS**

    a. Meetings of the Members may be called upon by the Members as necessary, but no less than once per year, by given written notice of such meetings to the Members.

**10.  CONTRIBUTIONS**

    a. The Company will establish a Bank account, with a bank card and checks, along with a credit card provided for the Company.
    The costs that will be needed for start-up of the Company will be:

    b. MAC Pro Computer is to be given to;
        Jonathan O'Neil Browne, ("Jonathan")
        8729 Montery Bay Loop,
        Bradenton, Florida, 34212,
    for developing a company website. This site will be developed within the 3 months of Jonathan receiving the MAC Pro.

    c. As to monthly payments for Shopify and the company providing access to credit card usage, Zaslow will incur 60% of the cost, Browne will incur 20%, and Coleman will incur 20%. The breakdown costs are attached as exhibit "A". The host and the credit card companies that are used for the site will not be paid until the site is launched. The site will be maintained and updated regularly by Browne and Coleman while Zaslow will be be in charge of sales.

**11.  TITLE TO COMPANY PROPERTY**

    a. All real and personal property purchased by the Company with Company funds shall be owned by the Company for the exclusive use of the Company.

    b. All real or personal property owned or purchased by Zaslow or by the ReEvent LLC, shall remain the property of Zaslow or ReEvent LLC, as the case may be.

    c. All real or personal property owned or purchased  by Browne, Coleman or their Company, Design Reasons shall remain in Browne, Coleman, or Design Reasons' ownership, as the case may be.

4

**12. EXPENSES**

    a. The Members shall be reimbursed by the Company for all. expenses incurred by them properly expended for Company purposes.

    b. The Members have agreed to grant each other permission to spend up to $100.00 without approval from the other member(s), for items required for Company business, however, e-mails must be sent to notify the other members of such expenditures and receipts must be maintained and processed with Company financial records. Any business expense above $100 must be approved by all Members in writing.

**13. COMPENSATION OF MEMBERS**

    a. The Members shall not be entitled to personal compensation for work rendered or services performed until such time as the above costs and expenses are paid or any unexpected costs accrue that all Members have agreed upon. No unpaid accrued time shall be subsequently paid as compensation or otherwise.

    b. At such time as compensation becomes payable to the Members, in accordance with 13(a) above, the compensation may be made in cash or kind, at such times and such amounts as determined by the Members and as permitted by applicable law.

**14. SEAL**

    The Seal of the Company shall be in the form of the impression affixed on the last page hereof.

**15. CERTIFICATE**

    The certificates, evidencing the ownership of the Company shall be in the form of the certificate attached hereto.

Signed and Agreed by:

Dolores Rita Browne _____ Date 8-12-13

Witness _____ Date 8-12-13

Valori Zaslow _____ Date 8/12/13

Witness _____ Date 8-12-13

Allegra Saens Coleman _____ Date 8-12-13

Witness _____ Date 8-12-13

5

**EXHIBIT "C"**

**DECLARATION OF  ALLEGRA SAENS COLEMAN**
**PURSUANT TO 28 USC 1728**

Pursuant to 28 USC 1728 and subject to penalties of perjury, I, Allegra Saens Coleman, hereby declare that the following facts are true and correct:

1.      As reflected in my resume, which is attached hereto as Exhibit "1," I am a business woman with an undergraduate BFA degree in Theatre from USC and a J.D. from Temple University.

2.      Since graduating from law school I have managed and operated two businesses in which my mother, Ms. Dolores Browne ("D. Browne" or "Ms. Browne") was my partner: 1) An events space known as TPDS club, a venue which serviced approximately 200 events per year in Center City Philadelphia, that included parties sponsored by individuals, promoters, universities, companies, law firms and hospitals, as well as weddings, corporate meetings, and bar-mitzvahs; and 2) a website for an interior design firm which was used to sell high end furniture, art and accessories.  Based on my background and experience I believe the time I have dedicated to the development of a website is reasonably valued at $65 per hour.

3.      In or about 2001, I met Valori Zaslow ("Zaslow" or "Ms. Zaslow") who managed a retail store that sold goods and services related to events. Ms. Zaslow mentioned that she was thinking of creating a website which could be used to "recycle" goods or provide services used for events. For instance, someone may have brought 100 champagne glasses to use at a wedding. If after the wedding they no longer had use for the glasses, they could sell or rent the glasses over the website to someone who was giving a wedding or event at a favorable price. Similarly, someone could sell or rent a wedding dress, a 20's centerpiece, or

tables and chairs that they bought and no longer wanted.

      4.      As we discussed the concept I mentioned that my brother, Jonathan Browne, was a software computer engineer who was skilled at building websites. This exchange initiated a dialogue which evolved into the idea of starting a company whose mission would be to develop, create, administer and maintain a website whose purpose would be to develop a marketplace for the sale, rental, and marketing of event related goods and services that could be used by individuals, vendors, promoters, purchasers and customers.

      5.      In order to implement the idea Ms. Zaslow, my mother and I entered into the Operating Agreement of ReEvent Enterprises, LLC. ("Operating Agreement" or "OA") (attached to D. Browne Declaration as Exhibit "2"  ) which was entered into in order to establish a Pennsylvania LLC whose purpose would be to create, establish, maintain, and administer an events based website.  The key material terms of the agreement provided that: 1) Ms. Zaslow, Ms. D. Browne, and Ms. Coleman would be the principals of the corporation, with Ms. Zaslow owning 60% of the stock, and Coleman and Browne each owning 20% of the stock (OA ¶s 1, 2, 3 and 5); 2) the term of the agreement was "indefinite" (OA¶ 4); 3) the purpose of the LLC was "to establish and maintain a website whose primary purpose would be to provide advertising space and pages to showcase items for sale, rent and consignment for events (¶ 2); 4) REL would not receive income from advertising or sales made by ReEvent, LLC ("ReEvent") (a company owned and controlled by Zaslow), catering a party by ReEvent, providing personnel for a party staffed by ReEvent, consultation services provided by Re Event, or consignments made by Sophisticated Seconds (another company owned by Zaslow), or items sold by DesignReasons (a company owned by Browne and Coleman) (OA ¶ 2);3) if the company was sold all three partners would have to agree to the terms sale, but the proceeds would be divided 60% Zaslow, 20%

Browne, and 20% Coleman(¶ 6(e) and (f); 4) The business was to be managed by the principals who are referred to as "Members" in the agreement (OA ¶8); 5) the site was to "be maintained and updated regularly by Browne and Coleman while Zaslow [was to be] in charge of sales (OA ¶10(c)); 6) the company was to open a bank account and procure a credit card in order to cover start up costs (OA ¶10[b]), and 7) a "MAC Pro Computer [was] to be given to Jonathan O'Neill Browne, for developing a company website."

6.       D. Browne and I offered to do the paperwork necessary to organize and establish ReEvent Enterprises, LLC as a corporate entity (a company that would have been separate and distinct from ReEvent LLC, which is owned exclusively by Ms. Zaslow), but Ms. Zaslow insisted on fulfilling the task on her own. When D. Browne and I asked whether the company had been incorporated, she assured my mother and me that it had. However, when my mother and I insisted on seeing the Articles of incorporation and other documentation establishing the existence of a new corporation she admitted that she had failed to organize the corporation. Her justification for failing to organize the corporation was that the website had not yet been launched and that it cost too much.

7.       The reason Ms. Zaslow was given 60% of the interest in the REL was because the concept was that the retail business at ReEvent would be part of the enterprise, and that since she started ReEvent she deserved a larger percentage return. Moreover, the understanding was that 60% is what she would receive in the event the company was sold, but in the day-to-day operation of the company Ms. Zaslow, my mother and I would act as equal partners. When running the enterprise on a day-to-day basis, of the three principles, no person had authority over any other, and the parties would strive to achieve consensus on all material decisions.

8.       As the Operating Agreement itself makes clear, it was the responsibility of me

and my mother to create, develop and maintain the website (OA, ¶10[c]), and it was Ms. Zaslow's responsibility to market the website. My mother and I recruited my brother Jon to create the code and software for the site, and my mother and I created the substantive content and design for the site.

9.       I worked approximately 450 hours on the website between August 1, 2013 and the present, representing a value of $29,250. My mother and I had an ongoing dialogue concerning logos, protocols, themes, carts, rental agreements, the privacy policy, coordination regarding construction of the website with Mr. Jonathan Browne, and the development of a mission statement for the website. In each of these areas I focused on writing, research, and coordinating how information should be placed in and on the computer for use on the website. My mother,  Ms. Browne,  focused on graphics and design. I conducted research, wrote and placed the words and icons for the website, served as the primary "go-between" between the Coleman/Browne team and Ms. Zaslow, the lead negotiator with Ms. Zaslow concerning all issues in which there were  differences between the parties (which sometimes were three way differences, or differences in which my mother or I sided with Zaslow against the remaining principal), scheduling and coordination meetings between the parties, conducting follow-through after the meetings, defining and clarifying roles and responsibilities as the project progressed, and negotiating agreement as to language use in all instances where agreement was required.

10.       My mother and I had to completely reconfigure the logo for the website because Ms. Zaslow refused to provide the graphics she insisted upon providing that were necessary for completing the "Home Page." We also provided all of the floating pictures for the Home Page," search site," "holidays," "venues," "special occasions," "event professionals," "search your location," "how it works," and "how do I rent" protocols.